672 S.W.2d 937 (1984)
L.S.J., Appellant,
v.
E.B., J.B., Cabinet For Human Resources, and A.R.S., Appellees.
Court of Appeals of Kentucky.
May 18, 1984.
As Modified on Denial of Rehearing August 3, 1984.
Forrest Roberts, Northeast Ky. Legal Services, Inc., Morehead, for appellant.
Mark Maddox, West Liberty, guardian ad litem.
Gary Conn, West Liberty, J. William Hernandez, Cabinet for Human Resources, Frankfort, for appellees.
Before HOWARD, McDONALD and WILHOIT, JJ.
McDONALD, Judge:
This appeal portrays a tragic drama resulting in the involuntary termination of the parental rights of the appellant natural mother.
A.R.S. was born to the appellant, L.S.J., on July 31, 1979. L.S.J. was lodged in jail at the time of the birth on a pending felony charge of forgery. She was not permitted to keep her daughter, so after the baby was seven days old she was taken from L.S.J. by the Cabinet for Human Resources and placed in foster care with the appellees, E.B. and J.B. (hereafter referred to as the foster parents).
In order that we do not misdirect anyone, we will state first that L.S.J. is the mother of six illegitimate children, all fathered by different men, and has a criminal felony *938 record. On the other side of the coin, undoubtedly the foster parents are a good, well-meaning and caring couple but are equally misguided. Let us further understand that if the applicable standard to apply here is the "best interests of the child" test, it is obvious to us the foster parents would prevail as the proper custodians of A.R.S. purely on the basis of the length of time they have had the child and the ability they have to provide her with a more advantageous lifestyle. This would be the standard for a voluntary termination under K.R.S. 199.601(7).
But to continue with the events: L.S.J. was sentenced to two years on her forgery charge and served a period of seven months. While in prison she requested visitation with her daughter. While visitation was accomplished to a limited degree, her distance from the child had some part to play in the infrequency of the visits. The foster parents and the cabinet attempted to persuade L.S.J. to voluntarily terminate her parental rights, but she refused and requested more visitation.
On August 25, 1981, the cabinet decided to move A.R.S. to another foster home in order to be closer to her mother so that child-parent bonding could result from more frequent visitations.
The foster parents responded by filing in the Morgan Circuit Court a petition to terminate L.S.J.'s parental rights. By ex parte order the foster parents were given temporary custody, and an ancillary order was entered terminating all visits between L.S.J. and her child. L.S.J. received no notice of the petition or order and was not represented by counsel in any way. When, after receiving copies of the court's order, she became aware of what had been done, she obtained counsel and filed an answer and counterclaim. Her answer demanded that the petition be dismissed because of the foster parents' lack of standing to file such a petition. The counterclaim requested damages on the basis of the foster parents' interference with L.S.J.'s relationship with her daughter and alienation of her daughter's affections.
Of particular note in this case is the fact that the foster parents signed a contract with the cabinet agreeing that custody would remain at all times with the cabinet and that they would not make any independent plans for the child's future, including adoption.
The cabinet informally took steps to have the foster parents voluntarily dismiss the petition, but no formal steps were taken by the cabinet nor did they make an appearance in the case.
L.S.J. filed a motion to dismiss the foster parents' petition and restore her visitation rights. The foster parents responded by conceding that they had no standing pursuant to K.R.S. 199.603(7) to bring a termination action; instead, they asked to amend their petition and have it styled a petition for adoption. L.S.J. objected, but her objections were overruled and the amended petition was granted by the court, along with a continuation of the denial of her visitation rights.
On July 26, 1982, the foster parents filed a motion to appoint a guardian ad litem for the child, along with the amended petition for adoption. They also joined the cabinet, the child and L.S.J. as defendants. In the meantime, L.S.J. petitioned by a writ of prohibition and mandamus for relief in the Court of Appeals. Relief was denied with further denial by the Supreme Court.
On October 18, 1982, the circuit court set aside its ex parte order of temporary custody of September 3, 1981, and restored custody of the child to the cabinet. On November 2, 1982, a visitation contract was signed between L.S.J. and the cabinet which established biweekly visitation between mother and daughter in L.S.J.'s home.
On November 3, 1982, the foster parents reacted by applying for a temporary injunction to halt the visitation between L.S.J. and her daughter, and a restraining order to keep L.S.J. away from her daughter. L.S.J. responded by requesting a temporary injunction to keep the foster parents from trying to stop the visitations and to *939 enjoin them from their efforts to prevent the child from being moved to a foster home closer to her mother's home. A hearing was held on the motion and the cross-motion on November 8, 1982. The cabinet was not present and neither was a guardian for the child. The court's ruling was taken under submission but no visitation was permitted pending a decision.
Trial in chief was scheduled for December 8, 1982, on the issue of termination, and a guardian ad litem was appointed on the day before the trial to represent A.R.S. At the trial the judge ruled that it would take into consideration the transcript of all the hearings and depositions. The guardian ad litem filed his report on December 9.
On April 6, 1983, the trial court entered its findings of fact and judgment terminating the parental rights of L.S.J. to her daughter, A.R.S.
We will discuss those assignments of error we feel necessary to resolve this appeal.
The initial petition filed by the foster parents was a petition to terminate the parental rights of L.S.J. to her daughter A.R.S. Under K.R.S. 199.603(7) (repealed effective July 15, 1984), involuntary termination of parental rights of a dependent, neglected or abused child may be instituted as follows:
Proceedings under K.R.S. 199.601 to 199.617 may be instituted upon petition by the cabinet, any child-placing agency licensed by the cabinet, any probation officer, any state or local law enforcement officer, any county or commonwealth's attorney or parent.
E.B. and J.B., as foster parents, are not among the persons or agencies having authority or standing to file a petition to terminate parental rights. We conclude, as the appellant argues, that they are private individuals with no standing to bring a termination action. The trial court was in error for failing to dismiss this action when appellant made motion to do so.
The foster parents argue that when the court granted the amendment of the petition from that of termination to that of adoption the matter was cured. However, K.R.S. 199.470(4) states:
No petition for adoption shall be filed unless prior to the filing of the petition the child sought to be adopted has been placed for adoption by a licensed child-placing institution or agency or by the cabinet, or the child has been placed with written approval of the secretary . . . .
It is plain from the record that the child was not placed for adoption by anyone. The evidence, in fact, is totally to the contrary in that A.R.S. was placed in foster care under a written contract which actually excluded adoption.
In Commonwealth, Dept. of Child Welfare v. Jarboe, Ky., 464 S.W.2d 287 (1971), a situation was described with facts similar to the present case. In that case the foster care parents filed a petition for adoption and the then Department of Child Welfare (now cabinet) did not approve or give consent pursuant to statute. The trial court, granting the adoption, made findings of fact which concluded that the child was being cared for properly and that it would be a shock to have the child removed from where it had been for three years. The Jarboe court noted that the statute required that the child be placed in the home of the persons to adopt for the purposes of adoption. And as in this case, the Jarboe court noted that the foster parents had violated the boarding-home contract with the department (cabinet), by attempting to adopt without complying with K.R.S. 199.470. We conclude that Jarboe is controlling in this instance.
The cabinet argues that the foster parents clearly had a right to bring an action for adoption without consent under K.R.S. 199.500(4), which states:
(4) Notwithstanding the provisions of subsection (1) of this section, an adoption may be granted without the consent of the natural living parents of a child if it is pleaded and proved as a part of the adoption proceedings that any of the provisions *940 of subsections (1) or (4) of KRS 199.603 exist with respect to such child.
The provisions of K.R.S. 199.603 all deal with involuntary termination of the parental rights of the parent of a dependent, neglected or abused child. A.R.S. does not fall within any of these categories, but the cabinet is claiming that we are stumbling over technicalities when dealing with the child's life and welfare. In essence, the cabinet is asking us to disregard the statutory requirements and to proceed upon whatever basis we would think appropriate in order to accomplish the end result of permitting the foster parents to have and keep A.R.S.
Actually, the foster parents' only possible chance of success in this proceeding would have been to demonstrate under K.R.S. 199.603(1) (involuntary termination proceeding) that either A.R.S. was abandoned or that she was substantially, continuously or repeatedly neglected or abused. If that were the case, the "best interests of the child" test could be applied. But by no stretch of the imagination can we say, under the facts of this case, that L.S.J. breached her statutory duty in relation to her daughter by abandonment, neglect or abuse. L.S.J. had her child only for the first seven days of her life; yet, the foster parents argue in a circuitous manner that abandonment and neglect resulted from L.S.J.'s conscious and deliberate lifestyle which led to her incarceration and the resultant separation from the child. They argue, in essence, that a thoughtful person would not place herself in the position of committing a crime which would cause separation from a child, which, in turn, is tantamount to abandonment or neglect. Appellees were unable to advise the court at oral argument if the same reasoning would apply to the father of a child if the father committed a crime. Regardless, we need not waste time with this argument but only direct that Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), be read and its mandates complied with; if this is done, then appellees' argument quickly fades.
It is our observation that the cabinet, once the foster parents demonstrated aggressive interest and commenced litigation, abandoned its duty and obligation to L.S.J. and her daughter by failing to fulfill its duties as set out in its own regulations. It is apparent to us that once the foster parents were committed to the course of keeping A.R.S., the cabinet cut L.S.J. adrift in a sea of very choppy waters. As we glean from the statutes and regulations, the primary duty and function of the cabinet and its staff is to attempt an upgrading of familial relationships, to strive to keep together parents and children who are committed to their charge, and to offer all support reasonable to that end. See 905 KAR 1:005 et. seq.
The authorities most vigorously relied upon by the appellees are the cases of Smith v. Wilson, Ky., 269 S.W.2d 255 (1954), and Van Wey v. O'Neal, Ky., 656 S.W.2d 731, 30 Ky.L.Summ. 8 (July 6, 1983). The appellees' argument relative to the Smith case did not take into account that the law changed with the amendment of K.R.S. 199.470(4), which now requires that children be first placed for adoption before an adoption petition can be filed. Clearly, this was not done in the case at hand. The argument offered relative to the Van Wey case fails to take into account that Ms. VanWey voluntarily gave consent to adoption, which was the basis of the initiation of the case. Here, L.S.J.'s actions were always inconsistent with voluntary termination.
Lastly, we believe the trial court erred by dismissing L.S.J.'s counterclaim. She sued the foster parents for tortious conduct of interference and alienation of affections. While this may seem a harsh action to take against the foster parents, it is our belief that the only way to curtail such conduct as they resorted to is to permit the tort law to operate and address the wrongdoing on their part, if there was any, inasmuch as sovereign immunity and judicial immunity would protect the others involved. Cf. Pulliam v. Allen, ___ U.S. ___, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984) *941 (opinion by J. Blackmun). It is evident from the record that neither the court nor the cabinet were going to provide L.S.J. with any assistance or protection. Therefore, we conclude that the trial court erred in dismissing L.S.J.'s counterclaim for her own self-help against the foster parents for any compensation she might reasonably be entitled to. We therefore direct the trial court to reinstate the counterclaim.
It is the opinion of this court that A.R.S. be returned to L.S.J. forthwith, and that the judgment of the trial court be reversed and set aside.
WILHOIT, J., concurs.
HOWARD, J., dissents and files a separate opinion.
HOWARD, Judge, dissenting.
I respectfully dissent as to the ultimate result in this case. I agree with the majority that proper procedures have not been followed in this case and that such errors demand the reversal of same. However, I cannot agree that the child involved should be turned over forthwith to her mother.
I would reverse this case with directions that the child involved be returned to the Cabinet for Human Resources during the pendency of this action. On remand to the trial court, evidence should be adduced as to whether or not the mother can support the child, the mother's efforts at rehabilitation, and if the mother has had a good record with law enforcement authorities since her parole. Further, the Department for Human Resources should file a petition for termination of rights so that the case can proceed along regular channels.