Chris **BAKER** and Denise Baker, Appellants

v.

Ronald William **WEBB** and Angela Joyce Webb

and

J.A.J., A Minor, and Cabinet for Families and Children, Appellees.

No. 2003–SC–0243–DG.

Supreme Court of Kentucky.

Feb. 19, 2004.

Casey Alan Hixson, Bowling Green, Counsel for Appellants.

Bryan Lesieur, Brownsville, Mary Gaines Locke, Hodgenville, Counsel for Appellees.

STUMBO, Justice.

We took discretionary review of this case in order to determine whether the Edmonson Circuit Court erred in failing to allow the biological relatives of a minor child to intervene in an adoption proceeding instituted by the foster family with whom the child currently resides (the Webbs). Because we find that the Edmonson Circuit Court's decision denying Appellants' motion to intervene in the adoption proceeding pursuant to Civil Rule (CR) 24.01, intervention of right, was error, we vacate the circuit court's judgment of adoption in favor of the Webbs, and remand this case to the Edmonson Circuit Court with orders that Appellants' motion to intervene be granted.

The facts of this case are somewhat disputed and very little is in the record. However, it appears that in late June 2001, the Warren District Court removed the minor child, then four years old, from the custody of his father due to the biological father's arrest on pornography charges. The child was placed in the temporary custody of the Warren County Cabinet for Families and Children (hereinafter "Cabinet"), and the biological father committed suicide a few days later. On June 26, 2001, the child was placed in the Webb's foster home. Upon learning of the father's suicide, Appellants, who are second cousins to the child, contacted the Cabinet and expressed their interest in adopting the child. Appellants, who live in Ohio, contend that their first contact with the Cabinet occurred the day before the biological father's funeral. They allege that Cabinet employees told them that it was the Cabinet's policy to place children with blood relatives if possible, and that Appellants should enroll in foster parenting classes [1]. Appellants claim that the Cabinet employees led them to believe that they would be receiving the child, but that any adoption proceeding could not occur until the biological mother's parental rights were terminated, which would not likely take place until the first of 2002. In the meanwhile, Appellants state, the Cabinet told them that the child should remain in the Webbs' home. Appellants claim that they attempted to contact the Cabinet numerous times by telephone and otherwise after these initial conversations, but their correspondence was never answered. Appellants eventually learned from outside sources that the mother's parental rights had been terminated and that the Webbs had filed an adoption action in the Edmonson Circuit Court.

The Cabinet contends that during the initial contacts in June 2001, it informed Appellants that they would have to complete an adoptive home study before the child could be placed in their home. The Cabinet claims that it heard nothing further from Appellants until it received an e-mail from Mrs. Baker on November 26, 2001, advising that they were obtaining an attorney.

Appellants also filed a complaint with the Cabinet's Office of the Ombudsman alleging that the Cabinet's Warren County office failed to consider Appellants as potential adoptive parents. The Ombudsman

---

1. It is not clear from the record whether Appellants enrolled in such classes.

subsequently informed Appellants, by letter dated January 3, 2002, that their complaint was justified because the Cabinet's own Standards of Practice "require[ ] the Cabinet assess the possibility of a relative placement prior to placement in foster care." The Ombudsman specifically found that the Cabinet should have initiated a home study of Appellants by making a referral to the Interstate Compact Administrator once it became known that relatives were interested in adoption. The Cabinet concedes that it did not initiate such actions.

Appellants attended the final adoption hearing on January 14, 2002, even though their motion to intervene had been denied. The Cabinet withdrew its consent to the adoption by the Webbs after having been presented with the Ombudsman's findings. However, the Edmonson Circuit Court ultimately granted the adoption without the Cabinet's approval.

■ CR 24.01 gives parties an intervention of right and reads in pertinent part:

Upon timely application anyone shall be permitted to intervene in an action (a) when a statute confers an unconditional right to intervene, or (b) when the applicant claims an interest relating to the property or transaction which is the subject of the action and is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless that interest is adequately represented by existing parties.

In order to intervene, the party's interest relating to the transaction must be a "present substantial interest in the subject matter of the lawsuit," rather than an expectancy or contingent interest. *Gayner v. Packaging Service Corp. of Ky.*, Ky. App., 636 S.W.2d 658, 659 (1982).

This Court has never specifically addressed a party's intervention as of right in an adoption proceeding. Other courts addressing similar issues have allowed intervention for various reasons. *See e.g., Bechtel v. Rose*, 150 Ariz. 68, 722 P.2d 236, 241 n. 3 (1986) (holding that a grandmother has right to intervene in dependency action due to the high value Arizona law places on the integrity of the family, although not specifically granted by any statute, and specifically stating, "[n]or do we necessarily limit our decision today solely to grandparents; other relatives might also be accorded intervention should the need and propriety of their intervention be demonstrated"); *In the Interest of A.G.*, 558 N.W.2d 400 (Iowa 1997) (holding that a grandmother could intervene by right in a child-in-need-of-assistance proceeding in juvenile court because an Iowa statute allowed "a relative or other suitable person" to be considered for custody of a child in need of assistance); *In the Matter of C.G.L.*, 28 S.W.3d 502 (Mo.Ct. App.2000) (allowing members of an Indian tribe intervention of right in an adoption proceeding because the Indian Child Welfare Act provided that other Indian families be given preference over other adoptive families in the placement of Indian children); *In the Matter of B.C.*, 749 P.2d 542 (Ok.1988) (holding current foster parents were allowed to intervene as of right in an adoption proceeding brought by previous foster parents due to status as "in loco parentis"). *But see In the Matter of the Adoption of G.D.L.*, 747 P.2d 282 (Ok. 1987) (holding that a grandmother did not have an interest in the adoption action by a third party because Oklahoma law did not entitle grandparents to notice in adoption proceedings, nor grant them visitation rights).

The Court of Appeals found *In the Matter of the Adoption of C.C.L.B.*, 305 Mont. 22, 22 P.3d 646 (2001), persuasive to its decision that Appellants did not have a

right to intervene in the adoption proceeding. That case also dealt with second cousins seeking to intervene in an adoption proceeding initiated by the child's foster parents. The Supreme Court of Montana held that various statutory and policy provisions favoring "extended family members" in adoption proceedings did not create a sufficient legal interest compelling intervention. *Id.* at 649. However, the court went on to say that there was no need to examine the policies and statutes in detail because second cousins were not included in Montana law's definition of "extended family members." *Id.* at 650. We believe this fact distinguishes the case from the case at bar and therefore do not find it persuasive to our current situation. Kentucky law does not attempt to define "relative" as that term is used in the adoption statutes and regulations of the Cabinet.

The Webbs argue that Kentucky Revised Statute (KRS) 199.470, which governs petitions for the adoption of children, only specifically recognizes stepparents, grandparents, sisters and brothers, and aunts and uncles; and therefore, Appellants do not have a superior right to adopt. However, KRS 199.470 merely sets out those individuals by exempting them from the requirement that anyone seeking to adopt a child obtain written approval from the Secretary of the Cabinet. The statute does not attempt to define this group of individuals as "relatives" or by any other term.

■ We believe that the policies and administrative regulations of the Cabinet that give priority to relatives of a child placed for adoption, in addition to the failure of Kentucky statutory and case law to define the term "relative," vest Appellants with a sufficient, cognizable legal interest in the adoption proceeding of this child.

The Cabinet's administrative regulation 922 KAR 1:140, governing foster care and adoption permanency services, states that "[p]lacement shall be [s]elected according to the least restrictive appropriate placement available, as required by KRS 620.090(2)...." KRS 620.090(2) reads:

In placing a child under an order of temporary custody, the cabinet or its designee shall use the least restrictive appropriate placement available. Preference shall be given to available and qualified relatives of the child considering the wishes of the parent or other person exercising custodial control or supervision, if known. The child may also be placed in a facility or program operated or approved by the cabinet, including a foster home, or any other appropriate available placement.

The language of this statute clearly evidences a preference for relative placement in adoption proceedings. *See Williams v. Phelps,* Ky.App., 961 S.W.2d 40, 42 (1998). Although the statute and regulations do not mandate that the Cabinet choose a relative placement over other options, they at the very least, require that the Cabinet consider relatives in its determination of proper placement. Here, the Cabinet completely failed to follow its own policies and procedures by not initiating a home study of Appellants. The Ombudsman's letter to Appellants explicitly stated that the Cabinet's current Standard of Practice "requires the Cabinet assess the possibility of a relative placement prior to placement in foster care."

■ This Court is of the opinion that the above regulations and policies of the Cabinet grant a sufficient legal interest under CR 24.01 to a relative who has been denied consideration for adoptive placement in complete derogation of the Cabinet's own operating procedures. In so holding, we are ensuring that all options

for a permanent placement are afforded children in need of a home. Evaluating several possible homes only more thoroughly serves the overriding legislative policy of considering the best interests of the child. By failing to initially evaluate Appellants for placement, the Cabinet has done a disservice to everyone involved, particularly the child who may have been denied the opportunity to be raised in a home more suitable to his needs.

Therefore, we set aside the adoption and order the Cabinet to have Appellants evaluated for relative placement, as mandated by its own policies and regulations, so that they may be considered as potential adoptive parents along with the Webbs. The Cabinet should then make an informed recommendation to the circuit court as to the best placement option for the child.[2] The circuit court should accept the Cabinet's recommendation for placement unless it finds that recommendation to be arbitrary or unreasonable. *Commonwealth, Dept. of Child Welfare v. Jarboe*, Ky., 464 S.W.2d 287, 290 (1971). However, KRS 199.515 allows the court to conduct an independent hearing after the Cabinet has filed its investigation report:

> After the report of the guardian ad litem, if any, for the child and the report required by KRS 199.510 have been filed, the court at any time *on motion of its own or that of any interested party* may set a time for a hearing on the petition to be conducted in chambers in privacy, except as hereinafter provided. Notice of the hearing shall be given to all necessary parties at least ten (10) days in advance thereof, unless such parties shall have answered and agreed to the adoption or have failed to answer

and the time for answering has expired, or shall have waived notice of the hearing. All necessary parties may be present and at least one (1) of the adopting parents and the guardian ad litem, if any, for the child must be present at the hearing.

KRS 199.515 (emphasis added); *See also Dickey v. Boxley*, Ky., 481 S.W.2d 283 (1972). If the court finds that a hearing is needed, it may take evidence and make its own findings based on the evidence before it. *Id.* at 285. The court may then rule on suitable placement in the best interests of the child. *Id.* We also note that we have previously held that KRS 13B.140 provides a party adversely affected by a final order of the Cabinet the right to file a petition for judicial review if all administrative remedies have been exhausted. *Thomas v. Cabinet for Families and Children*, Ky., 57 S.W.3d 262, 267 (2001). In Thomas, we held that a party who filed a complaint with the Quality Assurance Branch of the Cabinet had a right to judicial review of the Cabinet's placement decision regarding children who had previously been committed to the custody of the Cabinet. *Id.* Accordingly, any party aggrieved by the final order of the Cabinet is afforded a right to appeal that decision.

For the reasons set forth above, we hereby reverse the judgment of the Edmonson Circuit Court, vacate the adoption, and remand with directions to allow Appellants to intervene in the proceedings.

COOPER, GRAVES, and WINTERSHEIMER, JJ., concur.

JOHNSTONE, J., concurs in result only.

---

2. Unfortunately, we realize that allowing intervention at this point may be an exercise in futility, as the child has now resided and presumably bonded with the Webbs for nearly two years. The Cabinet will have to take this fact into consideration in making an honest recommendation to the circuit court upon remand.

KELLER, J., dissents by separate opinion, with LAMBERT, C.J., joining that dissent.

KELLER, Justice, dissenting.

Because the majority has literally "thrown the baby out with the bathwater" in this case, I respectfully dissent and vote to affirm the trial court's order denying Appellants' motion to intervene in the underlying adoption proceeding. I share the majority's frustration with what appears to be a continuing failure on the part of the Cabinet for Families and Children ("the Cabinet") to follow its own policies and procedures in adoption cases.[1] However, the apparent equitable position of Appellants vis-à-vis the Cabinet does nothing to alter the fact that Appellants' motion to intervene was procedurally void in that it was not accompanied by "a pleading setting forth the claim or defense for which intervention is sought."[2] The majority opinion's attempt to "do the right thing" in this case fails not only because its holding ignores our Rules of Civil Procedure, but also—and primarily—because, by severing the legal relationship between J.A.J. and the family with which he has lived for more than two and a half years simply to allow Appellants to assert a claim that they failed to assert properly before, the

majority effectively punishes J.A.J. for what it perceives to be the Cabinet's "sins" against Appellants.

"The procedure to secure the right to intervene is to a great extent fixed by ... rule, and intervention can generally be secured only in accordance with the terms of the applicable provision."[3] In Kentucky, CR 24.03 provides:

A person desiring to intervene shall serve a motion to intervene upon the parties as provided in Rule 5. *The motion* shall state the grounds therefor and *shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought.* The same procedure shall be followed when a statute gives a right to intervene....

CR 24.03's mandatory language ("shall be accompanied") means what it says, "[a]n application to intervene *must* be accompanied by a pleading setting forth the claim or defense for which the intervention is sought[,]"[4] and this requirement serves a valid purpose. The Kentucky Rules of Civil Procedure permit intervention of right only when a prospective intervenor "claims an interest relating to the property or transaction which is the subject of the action and is so situated that the disposition of the action may as a practical matter

**1.** *See Thomas v. Cabinet for Families and Children,* Ky., 57 S.W.3d 262, 263–65 (2001); *L.S.J. v. E.B.,* Ky.App., 672 S.W.2d 937, 940 (1984) ("It is our observation that the cabinet, once the foster parents demonstrated aggressive interest and commenced litigation, abandoned its duty and obligation to L.S.J. and her daughter by failing to fulfill its duties as set out in its own regulations."); *Cabinet for Human Resources v. McKeehan,* Ky.App., 672 S.W.2d 934, 935–36 (1984) (referencing misrepresentations by local agents that led foster parents to believe erroneously that a child had been placed with them for purposes of adoption).

**2.** CR 24.03.

**3.** 59 Am. Jur. 2d *Parties* § 229 (2002).

**4.** *Mulligan v. First National Bank & Trust Co. of Lexington,* Ky., 351 S.W.2d 59, 62 (1961) (emphasis added). *See also* 7 Kurt A. Phillips, Kentucky Practice: Rules Of Civil Procedure Annotated § 24.03 at 451 (5th ed.1995) [hereinafter Phillips] ("A motion to intervene under either branch of the Rule [CR 24.01 or 24.02] ... must be accompanied by [a] pleading setting forth the intervenor's claim or defense. This pleading should state a sufficient claim or defense.").

impair or impede the applicant's ability to protect that interest."[5] The interest in question must be "direct, substantial, and legally protectable"[6] ("as distinguished from a mere expectancy"[7]). Thus, intervention of right gives parties an opportunity to protect their interests by bringing a *competing claim* before the trial court[8] in the form of an intervening complaint[9] or similar pleading that identifies both the competing claim or interest and the relief sought to protect that claim or interest. As such, CR 24.03's underlying purpose is to "place other parties [as well as the trial court] on notice of the claimant's position,

the nature and basis of the claim asserted, and the relief sought by the intervenor."[10]

Given that Appellants did not have the written approval of the Cabinet's secretary, J.A.J. had not been placed with Appellants by the Cabinet for the purpose of adoption, and, in fact, Appellants never made an application to the Cabinet for permission to receive a child for adoption,[11] Appellants could not—and admit that they did not—seek to intervene in the underlying adoption proceeding for the purpose of asserting their own adoption petition.[12] However, the majority correctly concludes that Appellants had a "sufficient, cogniza-

5. CR 24.01(1).

6. PHILLIPS, *supra* note 4 at § 24.01 at 442. *Cf. Winn v. First Bank of Irvington,* Ky.App., 581 S.W.2d 21, 23 (1978) ("A party plaintiff must have a real, direct, present and substantial right or interest in the subject matter of the controversy." (citing 67 C.J.S. *Parties* § 6 (1950))); 59 AM. JUR 2D *Parties* § 176 at 595 (2002) (observing that a party seeking to demonstrate a "litigable interest" sufficient for intervention "must have an enforceable or recognizable right and more than a general interest in the subject matter of the proceedings." (footnotes omitted)).

7. *Winn,* 581 S.W.2d at 23. *See also* 59 AM. JUR. 2D *Parties* § 177 at 595 (2002) ("A person whose interest in the matter of litigation is an indirect, inconsequential, remote, conjectural, or contingent one, cannot intervene." (footnote omitted)).

8. *See Shepherd v. Rowe,* Ky., 243 S.W.2d 915 (1951) (intervention was proper in a suit for specific performance of a real estate contract when the intervenors asserted title to the land under a prior deed that had allegedly been fraudulently altered); *Summers v. Besterman,* 254 Ky. 231, 71 S.W.2d 450 (1934) (a party claiming to be the true owner of real estate may intervene in an attachment proceeding in which it is asserted that someone else owns the property); *Louisville Title Co. v. White Construction Co.,* 250 Ky. 212, 62 S.W.2d 795 (1933) (intervention to assert competing lien in foreclosure action); *Smith v. Jones,* 226 Ky. 785, 11 S.W.2d 937 (1928) (intervention to assert competing claim to title of real estate).

9. *See Ambassador College v. Combs,* Ky., 636 S.W.2d 305, 306 (1982).

10. 59 AM. JUR. 2D *Parties* § 231 (2002).

11. *See* KRS 199.473(1); 922 KAR 1:010.

12. *See* KRS 199.470(4) ("No petition for adoption shall be filed unless prior to the filing of the petition the child sought to be adopted has been placed for adoption ... by the cabinet, or the child has been placed with written approval of the secretary."); *Dept. of Child Welfare v. Jarboe,* Ky.App., 464 S.W.2d 287, 291 (1971) ("[KRS 199.470(4)] requires that before the child [which had been committed to the custody of the Department] can be adopted it must have been placed in the home for the purpose of adoption. It is therefore abundantly clear that the legislative policy of this state is that no child except as set out in [exceptions not relevant in this case] is to be adopted unless it is first placed in the home for that purpose by the Department of Child Welfare."); *L.S.J.,* 672 S.W.2d at 939 (applying *Jarboe* and observing that "[i]t is plain from the record that the child was not placed for adoption with anyone."); *McKeehan,* 672 S.W.2d at 936 (holding that the trial court lacked jurisdiction over an adoption petition where "the child has never been placed for adoption."). *See also* KRS 199.490(3) ("[A] copy of the written approval of the secretary of the Cabinet for Families and Children or the secretary's designee shall be filed with the petition.").

ble legal interest in the adoption proceeding of this child"[13] to support intervention by virtue of "the policies and administrative regulations of the Cabinet that give priority to relatives of a child placed for adoption."[14] In my view, however, the source of Appellants' interest in J.A.J.'s placement with them for adoption was 922 KAR 1:100, which provides for a relative preference *in adoption placements,*[15] and not, as the majority suggests, KRS 620.090(2) and 922 KAR 1:140, which provide for a relative placement preference when the Cabinet has custody of a child under a temporary custody order "for a period of time not to exceed forty-five (45) days"[16] unless extended by court order. Although Appellants would likely have had a sufficient legal interest in J.A.J.'s placement at the time of his removal to support their intervention in the dependency, neglect, and abuse ("DNA") proceedings in district court,[17] the KRS 620.090(2) and 922 KAR 1:140 placement preferences did not govern the Cabinet's decisions as to J.A.J.'s placement for the purpose of adoption and thus no longer conferred any

litigable interest upon Appellants at the time intervention was sought. The suggestion to the contrary found in a footnote in *Williams v. Phelps,*[18] which was an appeal from a custody proceeding, is clearly dicta.

Accordingly, Appellants could have demonstrated a cognizable interest that would have warranted intervention if their motion to intervene had included a claim for immediate entitlement to custody of J.A.J. or they had sought an order directing the Cabinet to place J.A.J. with them for the purposes of adoption. However, despite CR 24.03's mandatory requirements, Appellants filed no pleading with their motion to intervene and asserted no claim to physical custody of J.A.J.; instead, their motion stated only that they "seek to intervene in this action to at least temporarily suspend the adoption of [J.A.J.] until all the facts are discovered." As such, the trial court was correct to deny Appellants' motion to intervene,[19] and I would affirm the trial court's ruling.

As for the dicta concerning *Thomas v. Cabinet for Families and Children* that is

13. *Baker v. Webb,* Ky., 127 S.W.3d 622, —— (2004).

14. *Id.*

15. 922 KAR 1:100 § 3(2) provides: "Priority consideration for an *adoptive placement* shall be given to the: (a) Existing relative; or (b) Current foster parent." (emphasis added).

16. KRS 620.090(5).

17. In my view, Appellants could have sought to intervene in the district court proceedings: (1) prior to the temporary removal hearing (KRS 620.080) in order to assert a claim that they should be given temporary custody of J.A.J., *see* KRS 620.090(1), or that J.A.J. should be placed in their care by the Cabinet if the court gave custody to the Cabinet, *see* KRS 620.090(2); (2) after the temporary removal hearing, by means of a petition for immediate entitlement to custody of J.A.J., *see*

KRS 620.110; or (3) prior to the final adjudicatory hearing (KRS 620.100) in order to assert a claim for custody of J.A.J. *See* KRS 620.140(1)(c). Authority from other jurisdictions—some of which is cited in today's majority opinion—supports the conclusion that relative placement preferences confer interests that can be asserted in such proceedings. *See In the Interest of C.P.,* 34 Colo.App. 54, 524 P.2d 316 (1974); *In Re Kayle C.,* 253 Neb. 685, 574 N.W.2d 473 (1998); *In the Interest of A.G.,* 558 N.W.2d 400 (Iowa 1997).

18. Ky.App., 961 S.W.2d 40 (1998).

19. *See Polo v. Cuyahoga County Board of Elections,* 74 Ohio St.3d 143, 656 N.E.2d 1277, 1278 (1995) (interpreting language of Ohio Civil Rule 24(C), which is identical to CR 24.03, as a procedural bar: "Since Uffman–Kirsch's motion [to intervene] is not accompanied by any pleading, her motion is denied.").

found in the next-to-last paragraph of the majority opinion, I stand by the views that I expressed in my concurring opinion in that case, which are, in my view, even more applicable to the case at bar.[20]

LAMBERT, C.J., joins this dissenting opinion.

20. *Thomas,* 57 S.W.3d at 267–69 (Keller, J., concurring). .