RENDERED: MAY 20, 2010
TO BE PUBLISHED

# Supreme Court of Kentucky

## 2008-SC-000950-DGE

FINAL

DATE 8/26/2010 /s/ Luther Hicks

COMMONWEALTH OF KENTUCKY, CABINET
FOR HEALTH AND FAMILY SERVICES           APPELLANT

ON REVIEW FROM COURT OF APPEALS
CASE NO. 2007-CA-001783-ME
KENTON FAMILY COURT NO. 06-AD-00096

V.

L.J.P.; M.J.P.; AND D.J.P., A CHILD           APPELLEES

**OPINION OF THE COURT BY JUSTICE NOBLE**

**<u>REVERSING</u>**

This case involves a termination of parental rights action in which the court denied the paternal grandparents' motion to intervene. The grandparents, before us as Appellees, appealed the order denying their motion to the Court of Appeals, which reversed and held that the grandparents could intervene as a matter of right under CR 24.01. Appellant, the Cabinet for Health and Family Services, sought discretionary review, which this Court granted. For the reasons set forth below, the Court of Appeals is reversed.

**I. Background**

Appellees, L.J.P. and M.J.P., are the paternal grandparents of D.J.P., a boy born on August 28, 2005. Soon after D.J.P.'s birth, on October 4, 2005, his birth parents lost custody of him and his two half-siblings in a dependency, neglect, and abuse action. D.J.P. has since resided in foster care.

On November 15, 2006, the Cabinet filed a petition for involuntary termination of parental rights. About four months later, on March 9, 2007, the parents filed a petition to voluntarily terminate their parental rights, conditioned on D.J.P. being placed for adoption with Appellees. That same day, Appellees moved to intervene, claiming "The filing of the Petition for Voluntary Termination of Parental Rights by [the birth parents] gives [them] the right to intervene in this proceeding." They also requested custody.

The family court denied Appellees' motion to intervene. The court reasoned that the parents' petition for voluntary termination, the document which purported to give Appellees standing, was invalid because the Cabinet had previously filed a petition for involuntary termination. Appellees appealed this decision to the Court of Appeals, which held that they could intervene as a matter of right based on the "elevated status" given to grandparents in custody determinations. This Court then granted the Cabinet's motion for discretionary review.

## II. Analysis

### A. Timeliness

The family court first concluded that the parents could not be heard on their petition for voluntary termination "[s]ince the Petition for Involuntary Termination was filed by the Cabinet over three months before the birth parents filed their Petition." Thus, the court reasoned, this petition was untimely and could not give Appellees standing. The court reached this conclusion because it thought the effect of the Cabinet previously filing a

2

petition for involuntary termination was that the parents had lost "the right to be free from state interference in deciding who shall have custody of the[ir] minor child."

The petition for involuntary termination could not have had this effect, however, because it was merely pending. Although it is clear that if the court granted the petition parental rights would be terminated, *see* KRS 625.090(6)(a), it is equally clear that if the court denied the petition parental rights would be unaffected, *see* KRS 625.090(6)(b). That is, the filing of the petition, by itself, cannot affect parental rights. The parents retain whatever rights to their child they had before the petition was filed.

Among these rights is the right to be heard on a proper petition for voluntary termination. Unless a court actually terminates their rights, the parents have an interest in directing the care, custody, and upbringing of their child, *see Santosky v. Kramer*, 455 U.S. 745, 753 (1982), and so long as all statutory requirements were met, could consent to the adoption of their child and to voluntarily terminate their parental rights. Their rights are not affected by the mere filing of a petition, which contains only the Cabinet's allegations and argument; that can only be done by a valid court order terminating their rights, which contains "findings of fact, conclusions of law, and a decision as to each parent-respondent." KRS 625.090(6). Here, the trial court had in fact removed the children from the parents, and placed temporary custody with the Cabinet, but the effect on parental rights came from the order of the court for removal, not the mere filing of a petition.

3

Consequently, the fact that an involuntary termination of parental rights action was pending did not prevent the parents from filing a petition for voluntary termination of parental rights, nor did it take away their right to consent to adoption. The fact that they did file their petition *before* their parental rights were terminated makes their voluntary petition timely. Nonetheless, this does not alone give the *Appellees* standing to adopt D.J.P. or the right to intervene in the termination proceeding.

## B. The Substance of the Parents' Petition

Whether the Appellees have the right to intervene in the voluntary termination of parental rights proceeding must be determined based on their statutory rights toward D.J.P., or the parents, if any.

To make this determination, this Court must look to the allegations of the petition for voluntary termination. The substance of what the parents attempted to do through their petition for voluntary termination is consent adoption. The petition stated that they would voluntarily terminate their parental rights, but *"if and only if"* parental rights were vested in the Appellees, the paternal grandparents. This petition thus attempts to do more than merely voluntarily terminate parental rights. While the parents clearly could voluntarily terminate their parental rights, even in an involuntary termination proceeding, the real question is whether given the status of their case, they could go further and consent to adoption in a voluntary termination proceeding.

4

As an initial matter, a determination as to whether consent adoption applies in this case must be made. This Court has previously noted that

> adoption only exists as a right bestowed by statute and, furthermore, . . . there must be strict compliance with the adoption statutes. The law of adoption is in derogation of the common law. Nothing can be assumed, presumed, or inferred and what is not found in the statute is a matter for the legislature to supply and not the courts.

*Day v. Day*, 937 S.W.2d 717, 719 (Ky. 1997) (citing *Wright v. Howard*, 711 S.W.2d 492 (Ky. App. 1986), and *Coonradt v. Sailors*, 209 S.W.2d 859 (Tenn. 1948)). The statutory requirements for adoption are determinative.

In most "consent" adoptions, a parent agrees to allow a new spouse, or some other relatives, to adopt his or her child. The parent retains parental rights when the party seeking adoption is the parent's spouse, but must normally terminate parental rights when the child is adopted by non-spousal parties. That is what the parents attempted to do here.

If the parents retain parental rights to their children, then KRS 199.500 states that an adoption *shall not* be granted without voluntary and informed consent of the parents. However, merely retaining parental rights does not *compel* that a child be permitted to be adopted on the parents' consent alone. Obtaining the consent of parents who retain their parental rights is but the *first* step of a consent adoption. Thereafter, all the rest of the statutory provisions governing adoption proceedings apply.

Pursuant to KRS 199.470(3), Appellees, as parties, could not petition to adopt D.J.P. unless the child had been placed with them by the Cabinet or other appropriate agency, or "until [he] has resided continuously in [their]

5

home . . . for at least ninety (90) days immediately prior to the filing of the adoption petition." In this case, D.J.P. was placed in foster care by the Cabinet, and has resided in foster care since shortly after his birth, in order to protect his safety. The record does not reflect that D.J.P. has at any time resided with Appellees, and thus certainly not for 90 days consecutively. Hence, Appellees would not have been able to adopt D.J.P. when the petition for involuntary termination was filed.[1]

The 90-day residency requirement "is a prerequisite to the trial court's exercise of jurisdiction to hear the petition for adoption. If the requirement is not satisfied, the trial court does not have the authority to hear the matter and any order conferred would be void." *Day*, 937 S.W.2d at 719 (citing *Cabinet v. McKeehan*, 672 S.W.2d 934 (Ky. App. 1984) and *Bd. of Adjustments v. Flood*, 581 S.W.2d 1 (Ky. 1978)). As the family court jurisdiction had not been properly invoked by Appellees in this case, they cannot bypass the statutory requirements and require the family court to entertain essentially the same petition in an improper form presented by other parties.

Further, the petition for voluntary termination is so equivocal that it is hardly a proper pleading, being replete with conditional language. For example, the parents stated that they "wish to release and relinquish all

---

[1] Should an adoption proceeding be later initiated in a proper manner by the other parties, Appellees would have a right to intervene in that proceeding. *Cf. Baker v. Webb*, 127 S.W.3d 622, 625-26 (Ky. 2004). In *Baker*, a child's second cousins moved to intervene in an adoption proceeding initiated by the child's non-relative foster parents. This Court held that the second cousins could intervene because the Cabinet's policies and regulations, which gave relatives priority for adoption, vested them with a "sufficient, cognizable legal interest in the adoption." *Id.* at 625; *see also* 922 KAR 1:100, at § 3(a).

6

parental rights regarding [D.J.P.] to [L.J.P.] and [M.J.P.], *and to no one else but [L.J.P.] and [M.J.P.]."* (Emphasis added.) In addition, the concluding paragraph of the petition reads:

> Petitioners believe an adoptive placement with [L.J.P.] and [M.J.P.] is in the best interest of [D.J.P.] and that a supporting order terminating the parental rights of the biological parents is in the best interest of [D.J.P.], *if and only if all parental rights to [D.J.P.] are vested in [L.J.P.] and [M.J.P.] and not in the Cabinet or any other person.*

(Emphasis added.) The family court could not grant the parents' requested relief of voluntary termination under this petition without also placing D.J.P. for adoption with Appellees.

Likewise, the intent of Appellees to bypass statutory requirements is made clear by their "Motion to Intervene and Request for Custody." In this motion, they stress that there is "a preference for relative placement in adoption proceedings." (Citing *Baker v. Webb*, 127 S.W.3d 622, 625 (Ky. 2004)). They also point out that Article VII of the Interstate Compact on the Placement of Children would not apply as this involves D.J.P. "be[ing] adopted by his grandparents." In addition, they argue that the Cabinet does not need to approve their request because *"this is a grandparent adoption."* (Emphasis added.) While all that may be true, that does not make the parents' voluntary termination action an adoption proceeding. Appellees were unable to petition for adoption under KRS 199.470(3) due to the 90-day residency requirement, and they may not now by fiat make a termination proceeding an adoption proceeding.

In short, the parents' petition was an improper attempt to make an end-run around the requirements of the adoption statute. If the petition had been a proper petition for consent adoption, then Appellees would have had to invoke the family court's jurisdiction to proceed, and they cannot meet the statutory grounds to do so. The Appellees thus lack standing to go forward in an adoption proceeding.

If the Appellees have no standing to go forward in their own right to adopt D.J.P., then can they intervene in the termination proceedings? There are two ways a party may intervene: First, if "a statute confers an unconditional right to intervene." CR 24.01(1)(a). And second, if "the applicant claims an interest . . . which is the subject of the action and is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless that interest is adequately represented by existing parties." CR 24.01(1)(b). To be sufficient, the applicant's "interest relating to the transaction must be a present substantial interest in the subject matter of the lawsuit, rather than an expectancy or contingent interest." *Baker*, 127 S.W.3d at 624 (internal quotation omitted). In this case, neither of these two situations applies.

With respect to whether a statute confers an unconditional right to intervene, nowhere in the termination statutes is intervention mentioned. No party has cited any other statute that could confer on Appellees an unconditional right to intervene here.

8

In fact, the parties to the termination proceedings are specifically enumerated. For involuntary terminations, they are the child, the petitioner, the Cabinet (if not the petitioner), the birth parents, and qualifying putative fathers. KRS 625.060. For voluntary terminations, they are "the parent seeking termination" and "a guardian ad litem to represent the best interest of the child." KRS 625.041. Nobody else is listed as possible parties. In addition, KRS 625.070 does not require non-parental relatives or potential custodians to be given notice of involuntary termination proceedings. To put it simply, non-parental relatives or potential custodians such as Appellees are not mentioned or considered in the termination statutes, and thus it cannot be said that a statute confers an unconditional right to intervene.

Despite this, the Court of Appeals concluded that Appellees had substantial interest in this case, giving them a right to intervene under CR 24.01. They based this conclusion on KRS 625.100, which does not require Cabinet approval for certain relative placement; KRS 405.021, which provides for grandparent visitation post-termination; and *Baker v. Webb*, 127 S.W.3d 622 (Ky. 2004), which held that second cousins could intervene in an adoption proceeding. But these authorities do not create a substantial interest in a *termination* proceeding.

A termination proceeding concerns the relationship between parent and child, and not any other party. The Appellees, as grandparents, simply have no cognizable rights to protect or enforce in a termination proceeding. As the Court of Appeals aptly stated in an unpublished opinion:

9

> Understandably, movants are concerned that if . . . parental rights are terminated, this legal result could jeopardize (or result in the severing of) the bond between grandparent and child[]. If the legislature permitted extended family members, grandparents, aunts, uncles, adult siblings, cousins, and others to intervene in [termination of parental rights] cases, however, the goals and policies of the Adoption and Safe Families Act (AFSA) and Kentucky law, to provide efficient and timely justice for children and their families and to facilitate children's rights to a safe, healthy childhood with a nurturing, permanent family would be severely delayed.

*D.P. v. Commonwealth*, 2005 WL 3246168, at *3 (Ky. App. 2005) (unpublished opinion).

To the extent that Appellees' interest is in receiving custody post-termination, it would not be a "present substantial interest" but merely "an expectancy or contingent interest," *Baker*, 127 S.W.3d at 644, and thus insufficient to warrant their intervention as a matter of right. The family court is obligated, upon issuing an order terminating parental rights, to "vest care and custody of the child in such person, agency, or cabinet as the court believes best qualified." KRS 625.100(1). Thus, Appellees would be entitled to custody only if the court finds they are the "best qualified" among all potential custodians, something which is purely speculative at this point, especially since parental rights have not been terminated.

At that point in time, Appellees have further options. The record indicates that much of the procedural problems in this case arose because the Cabinet did not consider the Appellees for relative placement, or the Appellees did not proceed under the appropriate statutes to seek custody of D.J.P. This Court takes no position as to whether placing D.J.P. with his grandparents

10

would be in the best interest of the child, for that is a question best determined on proper hearing by the trier of fact. Here, it suffices to say that Appellees, being the only party on appeal, do not at present meet the statutory requirements to have standing to adopt D.J.P. nor do they have a right to intervene in the parents' termination proceedings.

### III. Conclusion

Given that the proceeding before the court was for termination, and not adoption, Appellees' motion to intervene was correctly denied, and they have no statutory standing to proceed with an adoption at this point. For these reasons, the Court of Appeals is reversed, and the order of the Family Court is reinstated.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Cynthia Kloeker
Cabinet for Human Resources
624 Madison Avenue
Third Floor
Covington, Kentucky 41011


COUNSEL FOR APPELLEES, L.J.P. AND M.J.P.:

Michael Ryan Voorhees
Voorhees & Levy, LLC
11159 Kenwood Road
Cincinnati, Ohio 45242


COUNSEL FOR APPELLEE, D.J.P., A CHILD:

Mary Miller Salyer
27 E. 4th Street
Covington, Kentucky 41011