v.

CABINET FOR HEALTH AND FAMI-LY SERVICES, Commonwealth of Kentucky; A.L.P. and A.R.P. (Minor Children), Appellees.

No. 2013–CA–000496–ME.

Court of Appeals of Kentucky.

Nov. 8, 2013.

Case Ordered Published by Court of Appeals Jan. 3, 2014.

Justin Genco, Stanford, KY, for appellant.

Sheila F. Redmond, Lexington, KY, for appellee.

Before CLAYTON, DIXON and MAZE, Judges.

## OPINION

DIXON, Judge:

Appellant, P.W., appeals from an order of the Garrard Family Court denying her motion for immediate placement with a relative, which sought to place her two minor children in the custody of relatives. Finding no error, we affirm.

P.W. and C.P.[1] are the biological parents of two daughters, A.L.P. and A.R.P. In March 2011, the Cabinet for Health and

1. P.W. and C.P. were initially jointly represented by counsel. However, after C.P.'s indictment for sexual abuse, counsel withdrew from joint representation and the family court appointed C.P. counsel. After the September 2012 dispositional hearing, C.P. ceased being an active participant in the proceedings. He is not a party on appeal.

Family Services ("Cabinet") filed a petition in the Garrard Family Court alleging that P.W. and C.P. were incapable of providing adequate care to the children due to substance abuse and environmental neglect. At the time of the petition, A.L.P. was two years old and A.R.P. was three months old. In fact, A.R.P. was still in the care of the University of Kentucky's Neonatal Intensive Care Unit, having been born 24 weeks premature. A removal hearing was thereafter held and both children were placed in the temporary custody of the Cabinet. A.L.P. was subsequently returned to her parents' care two weeks later after P.W. tested negative for drugs. However, due to her extensive medical needs, A.R.P. was placed in a medically-fragile foster home when she was discharged from the hospital four months after her birth.

In February 2012, the Cabinet filed a second neglect petition against P.W. and C.P. alleging ongoing substance abuse and failure to adequately care for A.L.P. A.L.P. was again removed from the home and placed with the same foster family who had custody of A.R.P. Subsequently, in September 2012, the family court conducted a dispositional review hearing and therein accepted the Cabinet's recommendation to change the goal from reunification to a termination of parental rights and adoption due to the parents' failure to complete their case plans and demonstrate skills necessary to ensure a safe reunification.

On October 18, 2012, P.W. notified the assigned social worker, Wendell Combs, that her paternal cousins, hereinafter referred to as the "C's," were willing to care for the children. A home evaluation was thereafter conducted and the C's were approved on December 10, 2012. However, when the Cabinet's Regional Review Committee met the following week to discuss

the case and placement alternatives, the decision was made to not recommend placement of the children with the C's. Despite their qualifications, the C's had previously had little contact with the children, and the Committee determined that because the children had bonded with their foster parents, who wished to adopt both, removal from the foster home was not in their best interest.

Upon learning of the Cabinet's recommendation, P.W.'s counsel filed a "Motion for Immediate Placement with Relative" requesting that temporary custody of the children be granted to the C's. Therein, P.W. argued that the Cabinet's refusal to place the children with the C's was contrary to Kentucky's statutory preference for placement of children with qualified relatives. The family court denied the motion and P.W. thereafter filed a Kentucky Rules of Civil Procedure (CR) 59.05 motion to alter, amend or vacate. Following a hearing, the family court entered an order denying the CR 59.05 motion, noting that from the children's initial removal in 2011, the Department of Community Based Services had repeatedly inquired of P.W. as to whether there were any suitable relatives for placement. The family court pointed out that it was not until October of 2012, when the Cabinet's goal changed to a termination of parental rights, that P.W. finally submitted the C's as possible foster parents. The family court continued,

> Throughout the entire process, as pointed out by the guardian ad litem, [P.W.] preferred foster care to relative care. She knew the children were out of her care, ..., she knew of the relatives who lived nearby, she was regularly asked about relatives. She failed to disclose the existence of these relatives for whatever reason.

> That addresses the mother's failure to notify DCBS of less restrictive alterna-

tives, now we turn to the interests of the children. [A.R.P.] has spent her entire [life] with the foster care family, she has bonded to the only parents she has ever known. [A.L.P.] has been in the same home for over a year. She too, has bonded with these people. The Court has been taught, from the beginning of his time as DRC and continuing as Family Court Judge, that changing the custodians or environment of children is one of the most stressful maneuvers that it will ever perform; it is always done with caution and consideration; it is in this case. After the amount of time with the foster parents, after multiple opportunities to provide relatives, the Court concludes that the best interest of the children is for them to remain in their adoptive home. The decisions of the mother have had unfortunate consequences but the bonding by the children over time has become complete and the Court will not undo it for a venture into the unknown of another placement.

P.W. thereafter appealed to this Court as a matter of right.

In this Court, P.W. argues that the trial court erred by ignoring the fact that the C's were a suitable relative placement option and instead finding that the children's best interests would be served by allowing the Cabinet to pursue the termination of her parental rights as well as the potential adoption of the children by the foster family. P.W. contends that the trial court's decision violates Kentucky Revised Statutes (KRS) 620.090 and 922 Kentucky Administrative Regulations (KAR) 1:140 Section 7, which indicate the legislative intent that preference shall be given to family relatives in placement determinations.

The family court's findings herein are reviewed under the clearly erroneous standard. *C.R.G. v. Cabinet for Health & Family Services*, 297 S.W.3d 914 (Ky.App. 2009). Such standard does not require uncontradicted proof, but rather "proof of a probative and substantive nature carrying the weight of evidence sufficient to convince ordinary prudent-minded people." *Id.* Significantly, "regardless of conflicting evidence, the weight of the evidence, or the fact the reviewing court would have reached a contrary finding, 'due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses' because judging the credibility of the witnesses and weighing evidence are tasks within the exclusive province of the trial court." *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky.2003).

■ The Cabinet's administrative regulation 922 KAR 1:140 Section (3)(6) governing foster care and adoption permanency services states that "[p]lacement shall be [s]elected according to the least restrictive appropriate placement available, as required by KRS 620.090(2). . . ." Further, KRS 620.090 provides, in relevant part:

(1) If, after completion of the temporary removal hearing, the court finds there are reasonable grounds to believe the child is dependent, neglected or abused, the court shall issue an order for temporary removal and shall grant temporary custody to the cabinet or other appropriate person or agency. Preference shall be given to available and qualified relatives of the child considering the wishes of the parent or other person exercising custodial control or supervision, if known. . . .

(2) In placing a child under an order of temporary custody, the cabinet or its designee shall use the least restrictive appropriate placement available. Preference shall be given to available and qualified relatives of the child considering the wishes of the parent or other person exercising custodial control or supervision, if known. The child may

also be placed in a facility or program operated or approved by the cabinet, including a foster home, or any other appropriate available placement....

■ Significantly, although the Cabinet is required to consider any known and qualified relatives in its determination of proper placement, they do not *mandate* that the Cabinet choose a relative placement over other options. *Baker v. Webb,* 127 S.W.3d 622, 625 (Ky.2004).

P.W. attempts to place the responsibility of locating her relatives on the Cabinet, arguing that her mental functioning level was too low to fully comprehend such a request. Indeed, P.W.'s low IQ was a factor in the Cabinet's ultimate determination that she would never be able to properly care for her children. Nevertheless, the record herein clearly establishes that the Cabinet repeatedly throughout the pendency of the proceedings inquired of P.W. as to the existence of any relatives.[2] Case worker Combs presented documentation of the various meetings he had with P.W. during which relatives were always discussed. Further, as the family court noted in its order, P.W. was able to participate in the court proceedings and conference with counsel. It was only upon learning that the Cabinet had changed its goal from reunification to termination and adoption, that P.W. readily provided the C's information.

We are of the opinion that very few individuals, despite any level of IQ, are not aware of their immediate relatives. Furthermore, we do not interpret Kentucky law as imposing upon the Cabinet the duty to endlessly search for unknown possible relatives. Undoubtedly, a parent must bear the burden of providing the Cabinet

with some information, even if it is only a name of a potential relative.

There can be no question that the overriding legislative policy of the pertinent statutes and regulations is consideration of the best interests of children. *See Baker,* 127 S.W.3d at 626. P.W. made a conscious decision to place her children with strangers rather than family at the inception of the proceedings in 2011. By the time the Cabinet's goal changed to adoption in late 2012, those strangers had become family. In fact, as the family court pointed out, the foster parents were the only parents A.R.P. had ever known. We must agree with the family court that while relative placement is certainly preferred, at some point the best interests of the children outweigh that factor. Such is especially true in this case given the tender age of A.R.P. and A.L.P. To remove them from the only home that essentially either had known and place them with the C's, with whom they had had little contact, was simply not in their best interest. Accordingly, we believe that the family court's decision to deny placement with the C's was proper.

The decision of the Garrard family court denying P.W.'s motion for immediate placement with a relative is affirmed.

ALL CONCUR.

■

**2.** The record indicates that P.W.'s parents were evaluated and rejected as potential guardians.