RENDERED: FEBRUARY 18, 2016
TO-BE-PUBLISHED

$\mathfrak{Supreme\ Court\ of\ Kentucky}$

FINAL

2015-SC-000247-DGE

DATE 3-10-16 _____

A. H.                                                                APPELLANT


ON REVIEW FROM COURT OF APPEALS

V.                     CASE NO. 2014-CA-001240-MR

KENTON CIRCUIT COURT NO. 14-AD-00080


W. R. L. AND                                                     APPELLEES
M. L.



**OPINION OF THE COURT BY JUSTICE CUNNINGHAM**

**REVERSING AND REMANDING**


Beginning in 2005, Amy and Melissa[1] were in a committed same-sex relationship with each other. Soon thereafter, they decided to have a child together. The couple resorted to artificial insemination. The procedure was successful. Melissa became pregnant and, on September 29, 2006, gave birth to Laura.[2] Amy was present for Laura's birth. Laura was given Amy's surname. Amy was intimately involved in all aspects of Laura's life.

The couple and Laura lived together as a family in Cincinnati, Ohio, until Melissa and Amy separated in February 2011. Although Melissa and Laura moved to Kentucky, Amy continued to spend time with Laura. In May 2012,

---

[1]     Initials are only being used in the caption. The adult litigants are identified in the body of the opinion by their first names.

[2]     A pseudonym is being used to protect the anonymity of the child.

Melissa married Wesley. On April 15, 2014, Wesley filed a petition for step-parent adoption of Laura in the Kenton County Family Court. On April 24, 2014, Amy filed a Petition for Shared Custody and Visitation in Hamilton County, Ohio. Amy, who was not named as a party in the Kenton County case, moved to intervene and to have the adoption action dismissed in light of her pending custody petition.

It was determined that the Kenton County Family Court would maintain jurisdiction over all matters of custody. The trial court heard oral arguments on Amy's motion to intervene and subsequently granted that motion. The court also dismissed the adoption action.

The Court of Appeals reversed, holding that Amy did not have standing to seek adoption. The court remanded with instructions to reinstate the adoption proceeding. Having reviewed the record and the law, we reverse the Court of Appeals' opinion and reinstate the trial court's order permitting Amy's intervention as well as the order dismissing the step-parent adoption action.

## Analysis

This case is not about same-sex relationships, changing social mores or notions about definition of family, or life styles. It is not about standing. This case has been needlessly complicated by the injection of these considerations. A facial application of our civil rules would have avoided the result the Court of Appeals appears to have lamented.

This is a case about people and their ability to participate in a lawsuit in which the outcome may adversely affect their interest. What we write here

today applies equally to a myriad of human relationships including heterosexual parenting, boyfriends, girlfriends, grandparents, and others. Most importantly, this case is about Laura. Sometimes the emotions which envelope these types of cases cause this primary concern to be overlooked.

## *Standard of Review*

We review the trial court's order granting intervention for clear error. *Ashland Public Library Bd. Of Trustees v. Scott*, 610 S.W.2d 895, 896 (Ky. 1981); *see also Carter v. Smith*, 170 S.W.3d 402, 409 (Ky. App. 2004). Applying this standard, we will only set aside the trial court's findings if those findings are clearly erroneous. *Moore v. Asente,* 110 S.W.3d 336, 353-54 (Ky. 2003) (citations omitted). Thus, we must determine whether the findings are supported by substantial evidence. *Id.*

## *Intervention v. Standing*

The Court of Appeals began its analysis by discussing the often vexing distinction between intervention and standing. The court then proceeded to erroneously misapply these two concepts. In an attempt to avoid additional confusion, we will refrain from belaboring this issue further. However, we must note that standing and intervention are two distinct concepts, and that standing to seek adoption is *not* a condition for intervening in an adoption proceeding. Our analysis is concerned only with Amy's right to intervene in the adoption action. In resolving this question, we need look no further than CR 24.01.

3

## CR 24.01

CR 24.01 is entitled "Intervention of right." Although the trial court did not directly cite this rule in its order, the court clearly applied the rule, which states in pertinent part:

> 1) Upon timely application anyone shall be permitted to intervene in an action (a) when a statute confers an unconditional right to intervene, or (b) when the applicant *claims an interest* relating to the property or *transaction* which is the subject of the action and is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless that interest is adequately represented by existing parties. (Emphasis added)

Subsection (b) is applicable to the present case. Applying that provision here, the subject of the adoption action is Laura, and Amy is claiming a cognizable legal interest—i.e. maintaining a relational connection with the child, either through custody or visitation. Furthermore, an order granting Wesley's adoption petition could impair or impede Amy's proffered custodial interest since, absent her intervention, the adoption proceedings would have concluded before her custody rights were determined. In contrast, if Amy were to gain joint custody prior to the adoption proceedings, then she would share the right to make decisions concerning the major aspects of Laura's upbringing. As noted by the trial court, adoption "clearly would be classified as a major decision concerning the child's upbringing." Thus, Amy has satisfied the requirements set forth in CR 24.01(b).

It is unnecessary to determine whether Amy will ultimately succeed in her custody petition. That is an issue for the trial court. Recognizing the potential impact of this case on future litigants, however, it is necessary to

4

provide clarification on the scope of our holding and specifically, what constitutes a sufficient "interest" for purposes of intervening in an adoption proceeding.

Based on the facts of this case, Amy has asserted a cognizable custodial interest. *See Baker v. Webb*, 127 S.W.3d 622 (Ky. 2004) (holding that child's biological relatives had a sufficient, *cognizable legal interest* in an adoption proceeding to be entitled to intervene as a matter of right). In addition to the facts previously discussed, it is also noteworthy that, prior to her artificial insemination, Melissa prepared a document that was signed by the sperm donor, in which the donor disclaimed any parental interest in the unborn child. That agreement also affirmatively recognized Amy as the other parent of the unborn child.

Much has been argued about the legality of and enforceability of that agreement. While not dispositive, the written agreement is certainly instructive evidence demonstrating the intent of Amy and Melissa to raise Laura as co-parents. That action, along with the host of other facts establishing Amy's involvement with the child in the capacity of a parent, indicate that Melissa fostered and encouraged Amy's relationship with Laura for years. This level of association and collaboration in the creation and rearing of a child clearly indicates a cognizable legal interest for purposes of intervening in an adoption proceeding. *See Mullins v. Picklesimer*, 317 S.W.3d 569 (Ky. 2010) (holding that same sex partner acting in the capacity of a parent had standing to seek custody and that the biological mother waived her superior custody right).

5

Therefore, although the present case involves a matter of first impression, the foundation for our determination has been provided by our previous decisions in *Baker* and *Mullins*. When read in concert and in the context of the issue presented here, *Baker* and *Mullins* weigh in favor of permitting intervention.

By granting Amy's motion to intervene in the adoption proceeding, the judge made a lawful and logical decision that comports with the dictates of CR 24.01. We give ample deference to the factual determinations of our trial courts. This is especially true in domestic cases.

CR 24.01 and CR 24.02 notwithstanding, trial courts also have great discretion in managing their dockets in a logical and efficient manner. It was certainly a logical decision for the court to address Amy's custody claim before addressing Wesley's step-parent adoption action. Moreover, because the timely and efficient administration of justice is often impeded by considering arguments advanced by non-parties asserting an interest in a pending action, great deference must be afforded a trial court's decision to allow such parties and their claims to be heard. After all, it is the trial court that will have to endure the brunt of dealing with the additional parties and their claims. In sum, we cannot say that the trial court's decision granting Amy's motion to intervene in the step-parent adoption proceeding was clearly erroneous.

Lastly, our analysis is confined to the issue of intervention as a matter of right under CR 24.01. Our decision does not foreclose an application of CR 24.02. That rule governs *permissive* intervention. CR 24.02 provides trial

6

courts with discretion to allow intervention in cases if the interest of the movant so warrants, even if the asserted interest fails to satisfy the dictates of CR 24.01 or our preceding analysis.

## Conclusion

For the foregoing reasons, we reverse the Court of Appeals' opinion and reinstate the trial court's order granting intervention and dismissing the step-parent adoption action.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Margo L. Grubbs
Jennifer Blain Landry
Camilla B. Taylor
Kyle A. Palazzolo
Christopher R. Clark
Gregory R. Nevins
Lisa T. Meeks

COUNSEL FOR APPELLEES:

Jacqueline S. Sawyers
Amy Howard Anderson