RENDERED: JULY 14, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0799-MR

DAVID LEMASTER                                                                 APPELLANT

v.

APPEAL FROM GREENUP CIRCUIT COURT
FAMILY COURT DIVISION
HONORABLE JENNIFER BARKER NEICE, SPECIAL JUDGE
ACTION NO. 15-CI-00542

KENDRA STILTNER AND
CHRISTOPHER CLAY STILTNER                                        APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: EASTON, JONES, AND LAMBERT, JUDGES.

EASTON, JUDGE: The Appellant, David Lemaster ("David"), appeals from the

Greenup Family Court's denial of his motion to intervene in a custody action. The

Appellee, Kendra Stiltner ("Kendra"), argues David did not have standing to

intervene because he could not be considered a *de facto* custodian under Kentucky law. Having reviewed the record and the applicable law, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

Kendra is the biological mother of the minor child, M.S., who was born in July 2012. At the time of M.S.'s birth, Kendra was married to Christopher Clay Stiltner ("Clay"), the biological father of M.S. When M.S. was born, both Kendra and Clay were under indictment for child abuse against one of Kendra's older children. Because of this, the Cabinet for Health and Family Services ("Cabinet") filed a Petition for Dependency, Neglect, or Abuse ("DNA"), alleging risk of harm to M.S.

Prior to the filing of the DNA petition, Kendra and Clay agreed, upon the recommendation of the Cabinet, for M.S. to be placed with Denise Stiltner ("Denise"), who was Clay's mother. David was Denise's long-term paramour, and they lived together. At the Temporary Removal Hearing during the DNA proceeding, the family court granted temporary custody of M.S. to Denise.

The Adjudication Hearing was continued multiple times due to the ongoing criminal case. The DNA action was finally adjudicated on April 28, 2014. Kendra and Clay stipulated to neglect or abuse. They had pled guilty to amended misdemeanor charges in the criminal action. Due to their guilty plea and stipulation, the family court granted permanent custody of M.S. to Denise.

On December 18, 2015, Kendra filed a Petition for Custody, listing Denise and Clay as Respondents. In April 2016, the family court granted Kendra supervised visits with M.S. Denise appealed this Order, which was affirmed by this Court in 2017.[1]

In October 2018, Kendra filed a motion for sole custody of M.S., or, in the alternative, for unsupervised parenting time. An Agreed Order was entered on February 13, 2019, in which custody remained with Denise, but Kendra was to have timesharing with M.S. The Agreed Order contained a plan to gradually increase Kendra's time with M.S. and removed the supervision requirement.

In May 2021, Denise filed a motion asking the family court to either suspend Kendra's timesharing or to make it supervised, based upon an injury M.S. received on a trampoline while in Kendra's care. Kendra filed a response, as well as her own motion to increase her time with M.S. Several continuances occurred based upon Denise's health issues, issues of the parties' counsel, and a special judge appointment due to the recusal of the previous judge. Before a hearing was held by the family court, Denise passed away on May 21, 2022.

On May 23, 2022, David filed a Motion for Intervention and Emergency Relief. In this motion, David stated he had M.S. in his care but needs legal authority to make decisions. He asked the family court to grant him

---

[1] *Stiltner v. Stiltner*, No. 2016-CA-000679-ME, 2017 WL 1102978 (Ky. App. Mar. 24, 2017).

-3-

emergency custody of M.S.  On May 27, 2022, Kendra filed a motion for custody, asking the family court to immediately restore custody to her.  She additionally filed a response to David's motion objecting to intervention.  Kendra argued David had no standing to intervene.  The family court scheduled an emergency hearing for May 31, 2022, at which it granted temporary custody of M.S. to Kendra.  The family court set another hearing date for June 23, 2022.

On June 1, 2022, David filed a Petition for Custody, claiming he is a *de facto* custodian of M.S., and alleging Kendra has waived superior custody and that she is unfit to have custody.  He additionally filed a renewed Motion for Intervention and Emergency Relief.  The family court heard these motions on June 7, 2022.  On that date, the family court overruled all of David's motions and cancelled the hearing for later in June.

David filed a Motion to Alter, Amend, or Vacate the family court's oral ruling of June 7, which the family court overruled.  A final written order was entered on June 21, 2022, memorializing the oral orders stated on June 7.  In this later order, the family court ruled David's motion to intervene was untimely, and that he failed to allege any set of facts which would qualify him as a *de facto* custodian of M.S.  The family court ruled, pursuant to *Burgess v. Chase*, 629 S.W.3d 826 (Ky. App. 2021), David could not qualify as a *de facto* custodian alongside Denise as she was the only one granted custody of M.S.

## STANDARD OF REVIEW

We review a trial court's order granting or denying intervention for clear error. *A.H. v. W.R.L.*, 482 S.W.3d 372, 373 (Ky. 2016). "In general, a court is given broad discretion in determining whether or not one should be permitted to intervene." *Ipock v. Ipock*, 403 S.W.3d 580, 583 (Ky. App. 2013). "The 'clearly erroneous' standard is sufficiently broad to permit the reviewing court to adopt a method of review which best fits the questions involved and the particular facts in a specific case. The appellate court should review each case according to what is most appropriate under the specific circumstances." *Reichle v. Reichle*, 719 S.W.2d 442, 444 (Ky. 1986).

We review a family court's legal conclusions under the *de novo* standard. *Brewick v. Brewick*, 121 S.W.3d 524, 526 (Ky. App. 2003). Whether a nonparent can be classified as a *de facto* custodian is a matter of law. *Hoskins v. Elliott*, 591 S.W.3d 858, 861 (Ky. App. 2019). "However, a court's evaluation of the timeliness of a motion to intervene is reviewed under an abuse of discretion standard." *Hazel Enterprises, LLC v. Cmty. Fin. Servs. Bank*, 382 S.W.3d 65, 67 (Ky. App. 2012). A finding of fact, including timeliness, is clearly erroneous if not supported by substantial evidence, which is evidence sufficient to induce conviction in the mind of a reasonable person. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003).

-5-

## ANALYSIS

We must determine if the family court erred in not allowing David to intervene in this action. "Standing and intervention are two distinct concepts," and standing to seek custody is not a condition for intervening in a custody action. *A.H.*, *supra* at 374.

The rules governing the ability to intervene in a proceeding are CR[2] 24.01[3] and 24.02.[4] CR 24.01 gives the power to intervene by right if its mandates are met. CR 24.02 "provides trial courts with discretion to allow intervention in cases if the interest of the movant so warrants, even if the asserted interest fails to satisfy the dictates of CR 24.01[.]" *A.H.*, *supra* at 375.

CR 24.01 states:

(1) Upon timely application anyone shall be permitted to intervene in an action (a) when a statute confers an unconditional right to intervene, or (b) when the applicant claims an interest relating to the property or transaction which is the subject of the action and is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless that interest is adequately represented by existing parties.

CR 24.02 states:

---

[2] Kentucky Rules of Civil Procedure.

[3] Intervention of Right.

[4] Permissive Intervention.

-6-

Upon timely application anyone may be permitted to intervene in an action: (a) when a statute confers a conditional right to intervene or (b) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

David does not specify under which rule he sought to intervene, but CR 24.01 is the proper rule for analysis in this case. "As compared to matter-of-right intervention in Rule 24.01, permissive intervention is more concerned with consolidating common legal and factual questions than with protecting the implicated rights of non-parties." *Bailey v. Bertram*, 471 S.W.3d 687, 690-91 (Ky. 2015), *as corrected* (Jun. 10, 2015). Regardless, under both rules, a motion to intervene must be timely. Therefore, we first examine whether David's motion to intervene was timely.

A court may consider the following factors to determine whether a motion to intervene was timely: "'(1) [T]he point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenor knew or reasonably should have known of his interest in the case; (4) the prejudice to the original parties due

to the proposed intervenor's failure, after he or she knew or reasonably should have known of his or her interest in the case, to apply promptly for intervention; and (5) the existence of unusual circumstances militating against or in favor of intervention.'" *Carter v. Smith*, 170 S.W.3d 402, 408 (Ky. App. 2004) (quoting *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989)).

The dispositive factor in this case is the third factor listed above, the length of time preceding the application during which the proposed intervenor knew or reasonably should have known of his interest in the case. This custody action was filed in December 2015. David did not move to intervene until May 2022. Between the six and one-half years the case was pending, there were multiple motions, amendments to the custody orders, and even a completed appeal.

David was clearly aware of the action throughout the entire life of the case, as he was listed as someone who could provide care to M.S. by the Cabinet at the beginning of the DNA action, which occurred prior to the custody action. David offers no adequate explanation for his delay. He makes no argument that anyone other than himself is responsible for his delay in filing an intervention motion. He simply failed to do so as he was content to allow Denise to fight the custody battle until she no longer could do so.

Denise apparently began having serious health issues at some point between January and mid-March 2022. While we are uncertain as to the specifics

of Denise's health issues, the record indicates it required hospitalization. At this point, David still did not see the need to intervene in the action. It was not until Denise had unfortunately passed away that he felt compelled to intervene.

As to the remaining factors, there were no findings made regarding them, and little evidence presented concerning them. As far as the progression of the case, there were pending motions by both Kendra and Denise in this action. Family and custody cases are distinct from most other civil cases, in that "final judgments" can be amended pursuant to KRS[5] 403.270 or 403.340. This case had been ongoing for over six years.

Regarding David's purpose for intervention, there is no indication that David filed to intervene for any purpose other than to care for M.S. It appears from the record that David had acted in a caretaking role of the child and wished to continue to do so. There is no evidence of any improper motive on David's part.

As for prejudice to the original parties, allowing David to intervene would certainly prejudice Kendra. Throughout the years this custody action was ongoing, Kendra was pursuing custody of her child against Denise, and only Denise. Clay, while a named party as the child's father, was not actively participating or attempting to regain custody of M.S. Adding another party against whom Kendra must litigate for custody would certainly prejudice her.

---

[5] Kentucky Revised Statutes.

Regarding "unusual circumstances," David has no familial relationship to M.S. While he may have acted in a grandparent-like role, he was not related to M.S. by blood or by marriage. This circumstance tends to weigh against intervention. There are no other unusual circumstances weighing in favor or against mitigation.

"Timeliness is a question of fact, which generally should be left to the circuit court." *Hazel Enterprises*, *supra* at 68 (citing *Ambassador College v. Combs*, 636 S.W.2d 305, 307 (Ky. 1982)). The family court determined that, under the circumstances of this case, David's motion was untimely, and that he had more than adequate opportunity to intervene at a prior time. We do not find the family court's finding to be clearly erroneous. Due to this untimeliness, the family court did not abuse its discretion in denying the intervention.

The family court went further to state David alleged no set of facts which would qualify him as a *de facto* custodian of M.S. We will briefly address this conclusion.

KRS 403.270 defines a *de facto* custodian as follows:

> (1) (a) As used in this chapter and KRS 405.020, unless the context requires otherwise, "de facto custodian" means a person who has been shown by clear and convincing evidence to have been the primary caregiver for, and financial supporter of, a child who within the last two (2) years has resided with the person for an aggregate period of six (6) months or more if the child is under three (3) years of age and

for an aggregate period of one (1) year or more if the child is three (3) years of age or older or has been placed by the Department for Community Based Services. Any period of time after a legal proceeding has been commenced by a parent seeking to regain custody of the child shall not be included in determining whether the child has resided with the person for the required minimum period.

(b) A person shall not be a de facto custodian until a court determines by clear and convincing evidence that the person meets the definition of de facto custodian established in paragraph (a) of this subsection. Once a court determines that a person meets the definition of de facto custodian, the court shall give the person the same standing in custody matters that is given to each parent under this section and KRS 403.280, 403.340, 403.350, 403.822, and 405.020.

David argues that because he and Denise had M.S. in their custody for most of her life, he should be determined to be a *de facto* custodian. His argument fails for several reasons.

First, any time a parent is pursuing a case to regain custody of the child tolls the timing requirement. KRS 403.270(1)(a). "Any direct participation in a child custody proceeding that demonstrates a parent's desire to regain custody of their child is sufficient to toll the *de facto* time requirement under KRS 403.270." *Meinders v. Middleton*, 572 S.W.3d 52, 59 (Ky. 2019). This includes working a case plan and cooperating in a DNA proceeding. *Hoskins*, *supra* at 862.

Likewise, once Kendra filed the current circuit action to regain custody of M.S., this tolled the time requirement.

Permanent custody of M.S. was granted to Denise on April 28, 2014. Prior to that date, it appears from the record that Kendra and Clay both actively participated in the DNA proceeding and worked their case plan. Therefore, April 28, 2014, is the date when Denise's time would begin in calculating *de facto* custodian status. Kendra filed her petition for custody in circuit court in December 2015, over a year later. Taking those facts at face value, Denise would have qualified as a *de facto* custodian of M.S. at that time.

This does not mean David also obtained *de facto* custodian status. He was never granted legal custody of M.S. – only Denise was. Ultimately, a determination of whether David qualified as a *de facto* custodian of M.S. in December 2015 is not required. This Court has determined that *de facto* custodian status is not necessarily a permanent status. It must be addressed each time the status is asserted. *See Sullivan v. Tucker*, 29 S.W.3d 805 (Ky. App. 2000); *Turner v. Hodge*, 590 S.W.3d 294 (Ky. App. 2019).

Kendra sought to regain custody of M.S. beginning in December 2015. David did not seek to intervene until 2022. In the meantime, Kendra and Denise (and Clay, to a lesser extent) participated in the custody action. We find no indication in the record of Denise ever asking the family court to designate her as

*de facto* custodian. Kendra obtained supervised visits in 2016. She later obtained unsupervised overnight visits in 2019. Therefore, even assuming Denise and/or David could have been designated as *de facto* custodians prior to 2016, that designation would have ceased in 2019 when Kendra became much more involved in M.S.'s care.

David argues pursuant to *Krieger v. Garvin*, 584 S.W.3d 727 (Ky. 2019), he should be able to be designated as M.S.'s *de facto* custodian because Denise met the requirements. The Kentucky Supreme Court in *Krieger* ruled that a grandparent and their long-term partner were not precluded from being a child's *de facto* custodians simply because they were not married. But the facts of *Krieger* are distinguishable from the circumstances of this case. First, the appellants in *Krieger* pursued a custody action *together* after *both* were given temporary custody of the child in a DNA proceeding. *Id.* at 728. Additionally, both moved the circuit court to find them the child's *de facto* custodians.

David had never participated in the custody action prior to his attempted intervention. He was never named as a party and did not move to intervene for more than six years. David was never named in any court orders. While at some point Denise could have been designated a *de facto* custodian of M.S. had she asked the family court to do so, David was unable to meet the requirements at the time he sought to intervene.

Much like the trial court's discretion to allow intervention of a party, the trial court also has wide discretion in considering a party's motion to amend a pleading. *First Nat'l Bank of Cincinnati v. Hartman*, 747 S.W.2d 614, 616 (Ky. App. 1988). In *Hartman*, this Court stated that one factor a court may consider in deciding whether to allow an amendment is futility. *Id.* We believe this factor is also applicable when considering intervention. Because David could not meet the definition of *de facto* custodian, allowing his intervention would have been futile. For this reason, it was certainly not an abuse of discretion for the family court to decline David's request for intervention.

**CONCLUSION**

The family court's findings of fact are supported by the evidence and not erroneous. The family court committed no error of law and properly acted within its discretion. The Greenup Family Court is AFFIRMED.

ALL CONCUR.

| BRIEF FOR APPELLANT: | BRIEF FOR APPELLEE KENDRA STILTNER: |
|---|---|
| Brandon M. Music | |
| Grayson, Kentucky | Robert T. Renfroe |
| | Greenup, Kentucky |