RENDERED: DECEMBER 13, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0660-ME

L.A.P.L.                                                                          APPELLANT

APPEAL FROM LOGAN CIRCUIT COURT
v.          HONORABLE JOE W. HENDRICKS, JR., JUDGE
ACTION NO. 23-AD-00002

CABINET FOR HEALTH AND
FAMILY SERVICES,
COMMONWEALTH OF KENTUCKY;
M.A.L.; AND J.M.L., A CHILD                                      APPELLEES

AND

NO. 2023-CA-0661-ME

L.A.P.L.                                                                          APPELLANT

APPEAL FROM LOGAN CIRCUIT COURT
v.          HONORABLE JOE W. HENDRICKS, JR., JUDGE
ACTION NO. 23-AD-00003

CABINET FOR HEALTH AND
FAMILY SERVICES,
COMMONWEALTH OF KENTUCKY;
M.A.L.; AND R.A.A.L., A CHILD                                   APPELLEES

AND

NO. 2023-CA-0667-ME

L.A.P.L.                                                                                    APPELLANT


                              APPEAL FROM LOGAN CIRCUIT COURT
v.                   HONORABLE JOE W. HENDRICKS, JR., JUDGE
                              ACTION NO. 23-AD-00004


CABINET FOR HEALTH AND
FAMILY SERVICES,
COMMONWEALTH OF KENTUCKY;
M.A.L.; AND E.A.L., A CHILD                                               APPELLEES


                                         OPINION
                                         AFFIRMING

                                    ** ** ** ** **

BEFORE: CALDWELL, McNEILL, AND TAYLOR, JUDGES.

TAYLOR, JUDGE: L.A.L.P. (Mother) appeals three Orders Terminating Parental

Rights and Orders of Judgment entered May 10, 2023, by the Logan Circuit Court

in three related actions which terminated her parental rights to her minor children,

J.M.L., R.A.A.L., and E.A.L. (Children).[1] Mother's counsel commenced this

---

[1] The orders and judgments also terminated the parental rights of Father, M.A.L., who did not file an appeal. The three appeals filed by L.A.L.P. (Mother) were consolidated by Order of this Court entered June 29, 2023.

-2-

appeal on her behalf and has filed a brief in compliance with *A.C. v. Cabinet for Health and Family Services*, 362 S.W.3d 361 (Ky. App. 2012) and *Anders v. California*, 386 U.S. 738 (1967). The *Anders* brief concedes that there are no meritorious or nonfrivolous issues that could be raised on appeal. Counsel has also filed a motion to withdraw. Mother has not filed a supplemental *pro se* brief, though she was afforded the option to do so by this Court's Order of January 10, 2024. *A.C.*, 362 S.W.3d at 371 ("Upon receiving counsel's motion to withdraw and accompanying *Anders* brief, this Court shall enter an order granting the indigent parent thirty days to file a *pro se* brief and deferring counsel's motion to withdraw to the merits panel."). Cabinet for Health and Family Services, Commonwealth of Kentucky (Cabinet) has filed a response brief. After a thorough review of the record on appeal, the relevant law, and the briefs filed, for the reasons stated we affirm the circuit court's judgments terminating Mother's parental rights. Additionally, we have granted the motion of Mother's counsel to withdraw by separate Order, as all requirements of *A.C.* and *Anders*, *supra*, have been met.

## BACKGROUND

In March of 2021, school officials in Warren County filed dependency, neglect, or abuse (DNA) petitions, regarding all three Children in Warren Family Court on the basis of educational neglect. Therein, the petitions

alleged the Children had accrued significant numbers of unexcused absences and tardies from school. (Record, "R." at Petitioner's Exhibit 3 to April 14, 2023, Hearing.) Initially, custody of the Children remained with the parents while the Cabinet conducted an investigation. The Children continued to accrue unexcused absences and custody was granted to the Cabinet by the Warren Family Court in April of 2021. Based on concerns the Cabinet uncovered in its investigation, including substance abuse by both parents and domestic violence in the home, the parents were provided with case plans. (Video Record, "V.R." April 14, 2023 – Hearing, 2:13:20.) Those case plans included that each parent would cooperate with the Cabinet and all service providers, submit to random drug screens, complete substance abuse, parenting, and mental health evaluations, and follow the recommendations of those evaluations. (V.R. April 14, 2023 – Hearing, 1:31:10.)

After removal by the Cabinet, a paternal aunt and her husband, as well as a paternal grandmother, were considered for relative placement. However, the Cabinet did not approve placement because of concerns with the relatives being able to adequately provide the high level of care required of the Children due to their various behavioral issues; the relatives' own health issues; and allegations of abuse made by the Children regarding the relatives. (V.R. April 14, 2023 – Hearing, 1:42:00.)

As the DNA cases progressed, Mother did not make any significant progress on any portion of her case plan, ceased having any meaningful contact with the Cabinet, and failed to appear in court for several proceedings. The Warren Family Court made a finding of educational neglect against Mother and granted the Cabinet's request for a waiver of reasonable efforts in September 2021.[2] After a year of no significant progress being made by either parent, the Warren Family Court changed the Children's goals to adoption, granted a waiver of reasonable efforts regarding Father, and transferred the DNA cases to Logan District Court in November 2022. (R. at Petitioner's Exhibit 3 to April 14, 2023, Hearing and Findings of Fact and Conclusions of Law in each case at 8.)

After the transfer of the DNA cases to Logan District Court in 2022, Mother was given another opportunity to work on a case plan, despite the previous waiver of reasonable efforts, but she failed to attend two separate case planning meetings scheduled with the Cabinet. (V.R. April 14, 2023 – Hearing, 1:56:50.) Mother subsequently absconded from a court-ordered rehabilitation facility in November of 2022 and once again ceased having any meaningful contact with the

---

[2] When determining the best interests of the child in involuntary termination of parental rights proceedings for a child placed in the Cabinet for Health and Family Services, Commonwealth of Kentucky's (Cabinet) custody, a circuit court shall consider whether the Cabinet, prior to filing termination of parental rights petitions, "made reasonable efforts [] to reunite the child with the parents . . ." Kentucky Revised Statutes (KRS) 625.090(3)(c). Reasonable efforts are defined as "the exercise of ordinary diligence and care by the department to utilize all preventive and reunification services available to the community in accordance with the state plan for Public Law 96-272 which are necessary to enable the child to safely live at home[.]" KRS 620.020(13).

Cabinet.[3] The Cabinet filed termination of parental rights (TPR) petitions in the Logan Circuit Court on January 20, 2023.[4] Mother was served by warning order attorney as her whereabouts were unknown. Subsequently, in early March of 2023 Mother was arrested for having previously absconded and was appointed counsel in the TPR actions. A final hearing was held on April 14, 2023.

At the beginning of the TPR hearing, Mother made an oral motion for a continuance in which Father joined. Mother requested more time to work on her case plan and explained that she was planning to go to a rehabilitation facility once she was released from incarceration. (V.R. April 14, 2023 – Hearing, 1:21:30.) The Cabinet objected to the motion, arguing that waivers of reasonable efforts had already been granted regarding both parents, that Mother had not completed a single task on any of her case plans, and that Father had already unsuccessfully attempted long term substance abuse treatment on multiple occasions. The circuit court denied the motion.

During the hearing, Mother admitted to having substance abuse issues and being "on the run" for around five months between November of 2022 and March of 2023. Mother further admitted voluntarily leaving the court-ordered

---

[3] Mother's rehabilitation was ordered as a result of criminal charges brought against her for possession of methamphetamine in November of 2021. Logan Circuit Court Action No. 21-CR-00472.

[4] Logan County does not have a family court judge.

rehabilitation facility, though she testified she had requested the rehabilitation. She also admitted to missing multiple proceedings in the DNA cases. She further testified that she began some of the tasks on her case plan but conceded that she never actually finished any of the plans. It was uncontested that the last time Mother had any physical contact with the Children was in April of 2021 and the last phone contact she had with the Children was sometime before June of 2021. (V.R. April 14, 2023 – Hearing, 2:17:45-2:22:00.)

In May of 2023, the circuit court entered findings of fact and conclusions of law and judgments terminating Mother's parental rights to each of the Children. These appeals followed. The *Anders* brief for Mother concedes there are no nonfrivolous grounds upon which the appeal can be brought. However, pursuant to *A.C.* and *Anders*, *supra*, counsel identifies two plausible arguments. The first is that the Cabinet failed to make reasonable efforts to reunify the Children with Mother or with a member of Father's family, and the second is that the circuit court abused its discretion when it failed to grant Mother's motion for continuance of the termination hearing.

## STANDARD OF REVIEW

In Kentucky, parental rights may be involuntarily terminated after three determinations are made: (1) the child is "[a]bused or neglected[,]" as defined by Kentucky Revised Statutes (KRS) 600.020(1); (2) the termination must

be in the child's best interest; and, (3) at least one ground of parental unfitness as set out in KRS 625.090(2) exists. KRS 625.090; *see also Cabinet for Health and Fam. Servs. v. K.H.*, 423 S.W.3d 204, 209 (Ky. 2014). The termination decision will only be reversed if it is clearly erroneous; that being if there is no substantial, clear, and convincing evidence to support the court's decision. *Cabinet for Health and Fam. Servs. v. T.N.H.*, 302 S.W.3d 658, 663 (Ky. 2010).

As concerns a motion for continuance, a lower court has "broad discretion in granting or overruling a motion for continuance and this Court will not interfere in the exercise of that discretion unless it is clearly abused." *Stallard v. Witherspoon*, 306 S.W.2d 299, 300 (Ky. 1957); *see also Deleo v. Deleo*, 533 S.W.3d 211, 217 (Ky. App. 2017).

In matters to which *A.C.* and *Anders*, *supra* are applicable, this Court "independently review[s] the record and ascertain[s] whether the appeal is, in fact, void of nonfrivolous grounds for reversal." 362 S.W.3d at 372 (citing *Anders*, 386 U.S. at 744). This review is tantamount to palpable error review. *Id.* at 370. "Fundamentally, a palpable error determination turns on whether the court believes there is a 'substantial possibility' that the result would have been different without the error." *Hibdon v. Hibdon*, 247 S.W.3d 915, 918 (Ky. App. 2007) (citation omitted).

ANALYSIS

It is clear from the record on appeal that there was substantial evidence to support the circuit court's statutory findings and decision to terminate Mother's parental rights. As concerns neglect, the Cabinet introduced into evidence certified copies of the DNA actions in the Warren Family Court regarding each child. Therein, the family court found that Mother had educationally neglected the Children, which had been stipulated to by Mother. In the Logan Circuit Court's findings of fact and conclusions of law, the court explicitly stated that it found by clear and convincing evidence in each case that the Children had been neglected or abused by both parents, as defined in KRS 600.020(1).[5]

The circuit court further found that it would be in the Children's best interests for termination to occur, considering every factor of KRS 625.090(3), and that four grounds of parental unfitness existed, namely KRS 625.090(2)(a), (e), (g), and (j),[6] though only one needed to have been proven. *See C.J. v. M.S.*, 572

---

[5] The circuit court specifically found the "children being subjected to scenes of domestic violence in the home, to substance abuse by their caregivers, to sexual assault, to neglect of their material, emotional, and healthcare needs." (R. at 53 of 2023-CA-0660-ME; R. at 54 of 2023-CA-0661-ME; and R. at 54 of 2023-CA-0667-ME.)

[6] In relevant part, KRS 625.090(2) provides:

> No termination of parental rights shall be ordered unless the Circuit Court also finds by clear and convincing evidence the existence of one (1) or more of the following grounds:

S.W.3d 492, 496 (Ky. App. 2019). It is uncontroverted that the Children had been in the Cabinet's custody for 21 months before the TPR petitions were filed, thus satisfying the requirements of KRS 625.090(2). *Cabinet for Health & Fam. Servs. v. H.L.O.*, 621 S.W.3d 452, 463 (Ky. 2021).

Under KRS 625.090(3)(c) the circuit court shall consider reasonable efforts made by the Cabinet "unless one or more of the circumstances enumerated in KRS 610.127 for not requiring reasonable efforts have been substantiated in a

---

(a) That the parent has abandoned the child for a period of not less than ninety (90) days;

. . . .

(e) That the parent, for a period of not less than six (6) months, has continuously or repeatedly failed or refused to provide or has been substantially incapable of providing essential parental care and protection for the child and that there is no reasonable expectation of improvement in parental care and protection, considering the age of the child;

. . . .

(g) That the parent, for reasons other than poverty alone, has continuously or repeatedly failed to provide or is incapable of providing essential food, clothing, shelter, medical care, or education reasonably necessary and available for the child's well-being and that there is no reasonable expectation of significant improvement in the parent's conduct in the immediately foreseeable future, considering the age of the child[.]

. . . .

(j) That the child has been in foster care under the responsibility of the cabinet for fifteen (15) cumulative months out of forty-eight (48) months preceding the filing of the petition to terminate parental rights[.]

written finding[.]" In this case, reasonable efforts were waived regarding Mother early into the DNA cases in the Warren Family Court, based on her substance abuse issues and lack of contact with the Children and the Cabinet. KRS 610.127(5); (R. at Petitioner's Exhibit 3 to April 14, 2023, Hearing.) Notably, Mother never contested the granting of this waiver. Nevertheless, the Cabinet was still willing to work with Mother after the DNA cases had transferred to Logan District Court and the Cabinet made efforts to provide an updated case plan for Mother, scheduling two different meetings. Mother admitted to missing the first one because she was sick, but did not recall if a second one was set. (V.R. April 14, 2023 – Hearing, 2:21:10.) Under these circumstances, the Cabinet did not fail to exercise any required reasonable efforts. *See J.R.E. v. Cabinet for Health and Fam. Servs.*, 667 S.W.3d 589, 593 (Ky. App. 2023).

Furthermore, the evidence supports that the Cabinet did properly consider relatives for placement.[7] However, "[u]nder KRS Chapter 625, proof that [relative placement] has been considered is not required to terminate parental rights." *R.C.R. v. Commonwealth, Cabinet for Hum. Res.*, 988 S.W.2d 36, 40 (Ky. App. 1998). "Once the conditions of terminating parental rights are met, it is the

---

[7] During the termination hearing, the Cabinet testified that Mother never submitted any relatives to be considered for placement, but Father did. (V.R. April 14, 2023 – Hearing, 1:36:00.) Mother does not argue that she was not afforded an opportunity to submit any relatives herself, only that Father's relatives were not properly considered by the Cabinet.

duty of the [C]abinet to then act in the best interests of the children. Placement with relatives may be an option for consideration but nothing more." *V.S. v. Commonwealth, Cabinet for Hum. Res.*, 706 S.W.2d 420, 426 (Ky. App. 1986). "[A]lthough the Cabinet is required to consider any known and qualified relatives in its determination of proper placement, they do not *mandate* that the Cabinet choose a relative placement over other options." *P.W. v. Cabinet for Health and Fam. Servs.*, 417 S.W.3d 758, 761 (Ky. App. 2013) (citing *Baker v. Webb*, 127 S.W.3d 622, 625 (Ky. 2004); 922 Kentucky Administrative Regulations (KAR) 1:140 Section (3)(6); KRS 620.090).

Regarding the motion for continuance, there are several factors relevant for our review. *P.S. v. Cabinet for Health and Fam. Servs.*, 596 S.W.3d 110, 117 (Ky. App. 2020).[8] In this case, Mother had been constructively served and was appointed counsel multiple weeks before the TPR hearing. Mother did not contend below that her counsel was afforded inadequate time to prepare, nor did counsel argue this in the *Anders* brief. Instead, the sole basis of Mother's request for a continuance was to get another chance to work on a case plan. The

---

[8] The relevant factors are: "1) length of delay; 2) previous continuances; 3) inconveniences to litigants, witnesses, counsel, and the court; 4) whether the delay is purposeful or is caused by the accused; 5) availability of other competent counsel; 6) complexity of the case; and, 7) whether denying the continuance will lead to identifiable prejudice." *P.S. v. Cabinet for Health and Fam. Servs.*, 596 S.W.3d 110, 117 (Ky. App. 2020) (citing *Snodgrass v. Commonwealth*, 814 S.W.2d 579, 581 (Ky. 1991), *overruled on other grounds by Lawson v. Commonwealth*, 53 S.W. 3d 534 (Ky. 2001)).

circuit court considered prejudice to the Children from a delay, including the length of time the Children had been in foster care and the fact that they were in adoptive homes. Notably, Mother explained that the rehabilitation program to which she was being released was set to last anywhere from six months to a year. Thus, it would have been several months before Mother could have made any significant progress on a case plan. Allowing a continuation in termination proceedings for the sole purpose to provide a parent more time to work a case plan could potentially prolong termination proceedings *ad infinitum*. This certainly would not be in the Children's best interest. In this case, reasonable efforts were already waived regarding Mother, she had already been given multiple chances to work a case plan, and she failed to complete a single task for over two years. Thus, the circuit court did not abuse its discretion in denying Mother's motion for a continuance.

## CONCLUSION

Based upon our thorough review of the record below, we agree with Mother's counsel that there is not a nonfrivolous issue which could be raised on appeal and to support reversal of the circuit court's judgments. Accordingly, finding no error in the circuit court's decision, we affirm the judgments terminating Mother's parental rights to J.M.L., R.A.A.L., and E.A.L.

ALL CONCUR.

BRIEF FOR APPELLANT:

Jay D. Joines
Russellville, Kentucky

BRIEF FOR APPELLEE CABINET
FOR HEALTH AND FAMILY
SERVICES:

Kevin Martz
Covington, Kentucky