TAYLOR, JUDGE:
J.L.C. brings Appeal Nos. 2016-CA-000609-ME, 2016-CA-000610-ME, and 2016-CA-000611-ME from Findings of Fact and Conclusions of Law and Orders Terminating Parental Rights and Orders of Judgment entered in the Fayette Circuit Court, Family Court Division (family court) terminating her parental rights separately as to T.S.T., T.M.T. and M.L.T. We affirm all three appeals.
J.L.C. is the biological mother of three children, T.S.T., born September 2, 2004, T.M.T., born April 17, 2006, and M.L.T., born October 2, 2007.[1] As early as 2005, the Cabinet for Health and Family Services, Commonwealth of Kentucky (Cabinet) began receiving referrals from individuals concerned for the well-being of J.L.C.'s children. There were specific concerns regarding J.L.C.'s inability to parent the children due to her substance abuse issues. The Cabinet began providing services to J.L.C. including substance abuse treatment. Unfortunately, J.L.C. struggled to maintain sobriety. Over the next several years, the Cabinet received other referrals regarding J.L.C.'s children, and the Cabinet continued to provide services.
In January 2013, the Cabinet received a referral that T.S.T. and T.M.T. were truant from school, and a petition alleging educational neglect was filed. The Cabinet did not originally seek to remove the children from J.L.C. However, shortly thereafter J.L.C. was arrested for alcohol intoxication and incarcerated. A caseworker for the Cabinet discovered J.L.C. had left her three children in the care of her mother. J.LC.'s mother had previous involvement with the Cabinet including a history of domestic violence with J.L.C.'s stepfather. When J.L.C. was a minor, there were substantiated acts of physical abuse by J.L.C.'s stepfather against her. And, there were also allegations that J.L.C.'s stepfather had sexually abused J.L.C.[2] J.L.C.'s mother and stepfather still resided together.
Under the circumstances, the Cabinet determined J.L.C.'s mother was not an *694 appropriate caregiver for J.L.C.'s three children. On July 3, 2013, the Cabinet filed an emergency petition for custody as to M.L.T., T.M.T., and T.S.T. A temporary custody order was entered granting custody of the three children to the Cabinet, and the children were placed in foster care. The Cabinet's initial plan following removal of the children was for reunification of J.L.C. and the children.
Once in the Cabinet's custody, the children were placed in a foster home. All three children immediately manifested profound behavioral issues. The children also suffered from medical neglect; two of the children needed surgery; and one had an untreated pinworm infection. A physical exam also revealed that one of the girls had likely been sexually abused. All three children also suffered from severe dental neglect that required extractions and surgery.
T.S.T., T.M.T., and M.L.T. were all initially placed in the same foster home. The oldest of the three children, a male, was removed from the foster home where his two younger sisters resided. The children were separated after the oldest child displayed sexually reactive behavior toward his younger sisters. This child had also reported being sexually abused by J.L.C.'s stepfather and J.L.C.'s brother.
The Cabinet continued to work with J.L.C. toward the goal of reunification. During this time J.L.C. struggled with sobriety, and she frequently relapsed resulting in positive drug screens. The Cabinet eventually changed its permanency goal for the children from reunification to adoption. Then, on October 23, 2015, the Cabinet filed petitions for involuntary termination of J.L.C.'s parental rights as to T.S.T., T.M.T., and M.L.T. Following an evidentiary hearing, by orders entered April 1, 2016, J.L.C.'s parental rights were terminated as to T.S.T., T.M.T., and M.L.T. These appeals by J.L.C. follow.
The Court's review of an action to terminate parental rights is confined to the clearly erroneous standard of Kentucky Rules of Civil Procedure (CR) 52.01 based upon clear and convincing evidence. Com., Cabinet for Health and Family Servs. v. T.N.H. , 302 S.W.3d 658 (Ky. 2010). Clear and convincing evidence is not necessarily uncontradicted evidence; rather, it is evidence "of a probative and substantial nature carrying the weight of evidence sufficient to convince ordinarily prudent-minded people." Id. at 663 (quoting M.P.S. v. Cabinet for Human Res. , 979 S.W.2d 114, 117 (Ky. App. 1998) ). And, an appellate court must "give a great deal of deference to the family court's findings." T.N.H. , 302 S.W.3d at 663 (citing K.R.L. v. P.A.C. , 210 S.W.3d 183, 187 (Ky. App. 2006) ).
J.L.C. asserts that the family court erred by failing to recognize that the Cabinet violated Kentucky Revised Statutes (KRS) 620.090 and 922 Kentucky Administrative Regulations (KAR) 1:140 by not placing the children with a relative following their removal from J.L.C.'s custody, thus, denying her "due process" of law. Specifically, J.L.C. contends that the children should have been placed with a maternal aunt rather than in foster care.
We harbor grave doubt as to whether a violation of KRS 620.090 and/or 922 KAR 1:140 would result in a constitutional due process violation claim. Nevertheless, we shall address J.L.C.'s underlying assertion of error.
KRS 620.090 governs temporary custody orders and contains a preference for placement of children with qualified available relatives. 16 Louise E. Graham & James E. Keller, Kentucky Practice-Domestic Relations Law § 25:34 (2016).
*695 KRS 620.090(1) specifically provides, in relevant part, that "[p]reference shall be given to available and qualified relatives of the child considering the wishes of the parent or other person exercising custodial control or supervision, if known." And, the administrative regulation that governs the Cabinet's foster care and adoption permanency services is 922 KAR 1:140. Section 3(3)(a) of 922 KAR 1:140 provides that "[u]pon removal of a child from the child's home, placement shall be ... [s]elected according to the least restrictive appropriate placement available, as required by 620.090(2)...." Thus, immediately following removal of a child, the Cabinet is clearly mandated to consider placement with relatives that are known and are qualified. However, the Cabinet is not mandated to choose relative placement over other placement options. P.W. v. Cabinet for Health and Family Serv. , 417 S.W.3d 758 (Ky. App. 2013) (citing Baker v. Webb , 127 S.W.3d 622 (Ky. 2004) ).
In this case, when the three children were initially removed from J.L.C.'s custody, the Cabinet inquired about placement with a relative. J.L.C. mentioned her mother for possible placement. However, due to the Cabinet's history of involvement with J.L.C.'s mother and stepfather, J.L.C.'s mother was not considered an appropriate placement option. J.L.C. also mentioned a maternal aunt that lived in Georgia. All three children were removed from their foster homes and placed with the aunt in Georgia. However, the aunt apparently failed to comply with the application process for her placement approval and, as a result, was denied approval by the State of Georgia. Following denial of the aunt's approval for placement, the Cabinet retrieved the children from Georgia and returned them to their previous foster families. Thus, the record indicates that the Cabinet did attempt to place J.L.C.'s children with a relative but the attempt was not successful. As a result, we believe that J.L.C.'s assertion that the family court erred by not requiring the Cabinet to comply with KRS 620.090 and 922 KAR 1:140 following removal from J.L.C.'s custody is without merit.
J.L.C. also contends that termination of her parental rights was not in the children's best interest.[3] J.L.C.'s specific argument is as follows:
In this particular case, there is no guarantee that since the children are currently placed in two different concurrent foster homes[4] that they will continue to have any contact with their siblings if adoptions occur, as there is no enforceable agreement which is either in place or potential under current law. It is the Cabinet's own policy not to separate siblings but T.S.T. was previously separated from his sisters, reunited during the trial placement with their maternal aunt in Georgia and upon return to Kentucky, and again separated from them at his request and returning to a prior foster home.
Without an enforceable agreement in place, there will be no assurances that continued contact between them will be possible. See Miller v. Norris (2011-CA-[00]1285-ME). The siblings would also have no standing to enforce any visitation rights. See B.L.M. et al. v. A.M., et al. (2011-CA-000333-ME). The finding made by the Trial Court that termination *696 of J.L.C.'s parental rights is in the best interest of the child is clearly erroneous.
J.L.C.'s brief at 8.
Involuntary termination of parental rights is governed by KRS 625.090. To involuntarily terminate parental rights under KRS 625.090, the family court must find by clear and convincing evidence that the following three-prong analysis is satisfied: (1) the child was adjudged to be abused or neglected as defined in KRS 600.020(1), (2) termination of parental rights is in the best interest of the child, and (3) the existence of at least one of the grounds enumerated in KRS 625.090(2). Cabinet for Health and Family Servs. v. K.H. , 423 S.W.3d 204 (Ky. 2014). In these appeals, J.L.C. is asserting that the second prong of the analysis-best interest of the child-was not satisfied.
In determining whether termination of parental rights is in the child's best interest, the factors set forth in KRS 625.090(3)(a)-(f) must be considered.[5] In the case sub judice , there was substantial evidence presented regarding the best interest factors set forth in KRS 625.090(3). There was testimony presented pursuant to KRS 625.090(3)(b) that acts of abuse or neglect were committed against the children while they were in the custody and care of the Cabinet. All three children were severely neglected due to J.L.C.'s substance abuse issues. There was evidence presented pursuant to KRS 625.090(3)(c) to demonstrate that reasonable efforts had been made by the Cabinet to reunite the children with J.L.C. The Cabinet provided J.L.C. with numerous services over several years in an attempt to help her achieve reunification with the children. The Cabinet initially provided J.L.C. with prevention planning and allowed the children to remain with J.L.C. The Cabinet also provided J.L.C. myriad services to assist in her achieving and maintaining sobriety. Despite the services provided to J.L.C., she was eventually arrested for alcohol intoxication and incarcerated. Upon her incarceration, it was discovered that J.L.C. had left the children with her mother and stepfather who were not suitable caregivers. There was evidence presented regarding the physical, emotional, and mental health of the children and their prospects for improvement *697 if termination were ordered as set forth under KRS 625.090(3)(e). And, all three children had shown dramatic improvement in their foster homes. As a result, we do not believe the family court erred by determining that it was in the childrens' best interest to terminate J.L.C.'s parental rights.
For the foregoing reasons, the judgments terminating parental rights of J.L.C. of the Fayette Circuit Court, Family Court Division, are affirmed.
ALL CONCUR.

P.S.T. is the putative father of T.S.T., T.M.T., and M.L.T. P.S.T. was constructively served and his appointed counsel was present and represented his interest at the hearing upon the petition to terminate his parental rights. P.S.T. has not pursued an appeal nor is he a party to these appeals.

According to the CATS Evaluation Report regarding one of J.L.C.'s children, there were apparently allegations in 1999 that J.L.C.'s stepfather had sexually abused J.L.C.

We have analyzed all three appeals simultaneously as the relevant evidence concerning all the three children is often identical or is substantially similar.

As previously stated, the three children were separated into two foster homes because the two younger children reported that their older brother had exhibited sexually reactive behavior directed toward them.

Kentucky Revised Statutes 625.090(3) provides:
(3) In determining the best interest of the child and the existence of a ground for termination, the Circuit Court shall consider the following factors:
(a) Mental illness as defined by KRS 202A.011(9), or an intellectual disability as defined by KRS 202B.010(9) of the parent as certified by a qualified mental health professional, which renders the parent consistently unable to care for the immediate and ongoing physical or psychological needs of the child for extended periods of time;
(b) Acts of abuse or neglect as defined in KRS 600.020(1) toward any child in the family;
(c) If the child has been placed with the cabinet, whether the cabinet has, prior to the filing of the petition made reasonable efforts as defined in KRS 620.020 to reunite the child with the parents unless one or more of the circumstances enumerated in KRS 610.127 for not requiring reasonable efforts have been substantiated in a written finding by the District Court;
(d) The efforts and adjustments the parent has made in his circumstances, conduct, or conditions to make it in the child's best interest to return him to his home within a reasonable period of time, considering the age of the child;
(e) The physical, emotional, and mental health of the child and the prospects for the improvement of the child's welfare if termination is ordered; and
(f) The payment or the failure to pay a reasonable portion of substitute physical care and maintenance if financially able to do so.