RENDERED: AUGUST 22, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1194-ME

J.E.L. AND R.E.F. APPELLANTS

v.

APPEAL FROM FRANKLIN CIRCUIT COURT
HONORABLE SQUIRE WILLIAMS, III, JUDGE
ACTION NO. 23-AD-00064

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; AND N.D.E.F.
(A MINOR CHILD) APPELLEES

AND

NO. 2024-CA-1195-ME

J.E.L. AND R.E.F. APPELLANTS

v.

APPEAL FROM FRANKLIN CIRCUIT COURT
HONORABLE SQUIRE WILLIAMS, III, JUDGE
ACTION NO. 23-AD-00065

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; AND L.F.F. (A
MINOR CHILD) APPELLEES

\*\* \*\* \*\* \*\* \*\*

BEFORE: CALDWELL, LAMBERT, AND MOYNAHAN, JUDGES.

MOYNAHAN, JUDGE: Appellants, J.E.L. and R.E.F. ("Mother" and "Father"; collectively "Parents"), jointly appeal the Franklin Family Court's August 15, 2024, Findings of Fact, Conclusions of Law, and Orders of Judgment terminating their rights to their minor children, L.F.F. and N.D.E.F. ("Children"). After careful review of the briefs, the record on appeal, and the relevant law, we affirm.

## I.    BACKGROUND

In September 2022, the Appellee, Cabinet for Health and Family Services ("the Cabinet"), filed dependency, neglect, and abuse ("DNA") petitions after Mother sought substance abuse treatment for having used methamphetamines and opiates. The Cabinet's other concerns were that Parents had been living with Children in a motel; Father's admitted use of methamphetamines; N.D.E.F.'s seizure disorder and his being six years old and never enrolled in school; and the 2014 removal of Mother's other two children due to past substance abuse.[1] In the

---

[1] At the time of removal, N.D.E.F. was six years old and L.F.F. was four years old.

instant case, Parents and Children tested positive for methamphetamine, amphetamines, and cannabinoids at the time of removal.[2]

Parents stipulated to neglect based on the petition allegations and the Cabinet provided them with case plans. Over the next few months, Parents worked on various aspects of their plans, completing parenting classes, obtaining assessments, and completing a thirty-day inpatient substance abuse program. Parents were provided with aftercare plans; however, they did not comply with their aftercare plan directions.

Within a month after completing the inpatient program, Mother stopped taking the medication she was prescribed for mental health concerns and relapsed on methamphetamine. Disregarding the Cabinet's referral to a suggested facility for an outpatient program, Mother began a different outpatient treatment with another facility in May 2023, which lasted until September 2023, when Mother was discharged for missing appointments and drug screens. Father did not enroll with any subsequent treatment after the inpatient program.

In October 2023, the family court changed the Children's goal from reunification to adoption. The Cabinet noted continuing concerns with Parents'

---

[2] Mother testified at the termination of parental rights hearing that she did not recall Children testing positive, but if they did, it must have been due to exposure from the use of the drugs by other tenants of the motel.

lack of housing,[3] employment, continuing inability to maintain sobriety, and failure to consistently drug screen with Capital Court Authority.[4]  Shortly afterward, renewed orders to drug screen with Capital Court Authority were entered,[5] Parents moved in with Mother's aunt, Mother obtained employment and became a certified nursing assistant, the family's ongoing Cabinet worker went on maternity leave, and a temporary Cabinet worker assumed her place.  Though renewed drug screening orders were entered, parents continued not to screen.  The Cabinet filed petitions for the termination of parental rights in December 2023.

The family court began a hearing on the termination of parental rights petitions on March 4, 2024.  The then-current Cabinet worker testified that the Cabinet's ongoing concerns with Parents consisted of their housing situation and lack of consistent drug screens.  She further testified that Mother had told her that she had not been drug screening prior to the hearing because of an active bench

---

[3] Since September 2022, Parents had periods of homelessness during which they were living in a tent.  While they had worked with a homeless housing coalition, Parents indicated they were unable to obtain housing due to previous evictions.

[4] Mother was drug screening with the outpatient facility she was attending; however, those screens were not random.  Mother's initial screen from that facility in June 2023 was positive for methamphetamine and amphetamine, and of the remaining screens, Mother missed multiple screens and had tested positive for cannabinoids.

[5] The Cabinet acknowledged that Parents were removed from Capital Court Authority's call-list for testing sometime around May 2023 when Mother enrolled with her outpatient program.

warrant for her arrest, though that warrant had since been resolved.[6]  The Cabinet

worker also indicated that Parents had scheduled mental health assessments with

the facility to which they were previously referred, but the appointments were not

set until a few weeks after the hearing.  The Cabinet worker's testimony concluded

with her stating that she thought Parents had a reasonable expectation of

improvement and they may be able to achieve stability if given a little more time.

Following this testimony, the family court continued the hearing to a future date to

allow Parents more time to work on their case plans and to drug screen.

The hearing resumed on July 15, 2024.  The family's previous

ongoing social worker had returned to work and testified that after the March 4,

2024, hearing, Parents tested positive for methamphetamines, amphetamines,

marijuana, and buprenorphine.[7]  Over the following months, Parents failed to

appear for some screens and continued testing positive for the same illicit

substances indicated above, as well as cocaine on at least one occasion.  The

Cabinet worker testified that Parents had left the home of Mother's aunt soon after

---

[6] The active bench warrant was for charges relating to credit card fraud and receipt of stolen property that occurred in August 2023.  We have confirmed this information in the records of the Franklin Family Court.  To maintain confidentiality of the parties, we will not list the case numbers of such publicly accessible files.  Information about the existence of charges may be referenced by an appellate court to provide perspective for the trial court proceedings.  *See, e.g.*, *Mulazim v. Commonwealth*, 600 S.W.3d 183, 203 n.6 (Ky. 2020).

[7] Mother testified that she had a prescription for buprenorphine (Suboxone) though the Cabinet was not in possession of that prescription for some time.

the March 2024 hearing and were allegedly homeless for a time before recently moving in with Mother's stepmother. She noted Parents had not provided her with any change of address; her attempted home visits were unsuccessful; and all of her certified mail was returned as undeliverable, so she was unable to determine if the current living arrangements would be safe and appropriate for the Children. There were still concerns with Parents' ability to maintain sobriety and stable employment and housing. The Cabinet worker explained that while Parents had "checked off the box" of completing mental health and substance abuse assessments early in the case, they were not maintaining their sobriety or adequately complying with the recommendations of those assessments, and so those items remained on their case plans. She admitted that the case plans had not been explicitly changed to reflect the Cabinet's desire for Parents to obtain any new assessments or enroll in new substance abuse treatment, but she testified that the need to do these things to address their substance abuse had been expressed to the Parents. She also testified that the Children were doing well in their current placement, which was a pre-adoptive home.

Mother testified next. She admitted to struggling with substance abuse and having periods of homelessness. Mother claimed that she did not follow up with the facilities the Cabinet recommended, including the appointment Parents scheduled to occur soon after the March 2024, hearing, because she believed the

assessments and treatment she had already received were adequate. Mother further maintained that it was never made clear to her that she needed to do anything else. She acknowledged she was fired from her job due to pending criminal charges and was not currently working but stated she was looking for a new job. She admitted to being discharged from her previous outpatient program in September 2023, but stated she recently resumed it along with Father in June 2024. Mother believed the Cabinet had not provided her any support but testified she was willing to go to a sober living facility or do anything that the Cabinet directed her to do now if it meant Children would be returned. In addressing her relapses, Mother indicated her Children's removal as a primary reason and believed she could adequately deal with any mental health and substance abuse issues if Children were returned.

Mother's stepmother then testified, verifying that Parents were currently living with her, and she and Mother were both on the lease. Father did not testify or call any witnesses. The family court took the matter under advisement and instructed the parties to submit proposed findings. The family court adopted the Cabinet's proposed Findings of Fact and Conclusions of Law and this appeal followed.

## II.    STANDARD OF REVIEW

A judgment involuntarily terminating a parent's rights to a minor child shall only be reversed if it is clearly erroneous, or, in other words, if there is

no substantial, clear, and convincing evidence to support the decision. *Cabinet for Health & Fam. Servs. v. T.N.H.*, 302 S.W.3d 658, 663 (Ky. 2010). Substantial evidence is "evidence of substance and relevant consequence having the fitness to induce conviction in the mind[]" of a reasonable person. *Owens-Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998) (citations omitted).

## III.   ANALYSIS

Parents argue the family court erred in fully adopting the Cabinet's proposed Findings of Fact and Conclusions of Law and that, even if the family court had authored its own findings of fact and conclusions of law, clear and convincing evidence did not exist to support the family court's decision to terminate parental rights.

To begin, we note that Parents did not file any sort of post-judgment motion requesting the family court amend or make additional findings. Kentucky Rules of Civil Procedure ("CR") 52.02; CR 52.04; *see also* CR 59.05. Though Parents now argue that there were some factual errors in the findings and the family court did not include facts which they believe support their position, they did not request the family court change its findings or bring their perceived failings to the family court's attention before filing the appeal. *See Johnson v. Johnson*, 232 S.W.3d 571, 575 (Ky. App. 2007) (holding that a party must file a motion

pursuant to CR 52.04 before "mounting a challenge" concerning a failure to make findings).

Regardless, a trial court may adopt findings of fact drafted by one of the parties. *Bingham v. Bingham*, 628 S.W.2d 628, 629 (Ky. 1982); *Prater v. Cabinet for Hum. Res., Commonwealth*, 954 S.W.2d 954, 956 (Ky. 1997). In this case, the family court instructed the parties to submit their own proposed findings, and there is no showing that the family court abdicated its fact-finding responsibility or that the findings "were not the product of the deliberations of the trial judge's mind." *Bingham*, 628 S.W.2d at 629-30. Thus, we find no reversible error in the mere adoption of the Cabinet's proposed findings by the family court.

That being said, after review of the record, the Court does note that the finding that Children had been in the Cabinet's custody for fifteen (15) of the most recent forty-eight (48) months preceding the filing of the petitions to terminate parental rights is erroneous.[8] However, as we shall explain further below, this finding is not necessary to support the family court's decision to terminate parental rights.

---

[8] The family court correctly found that Children had been in the Cabinet's custody for twenty-one (21) months before the time of the termination of parental rights hearing. However, as Parents assent, Children had only been in the Cabinet's custody for fourteen (14) months and three (3) weeks before the filing of the petitions.

There are three necessary determinations a circuit court must make before a parent's rights may be involuntarily terminated: (1) the child is found to be "[a]bused or neglected[,]" as defined by Kentucky Revised Statutes ("KRS") 600.020(1); (2) the termination must be in the child's best interest; and, (3) at least one ground of parental unfitness as set out in KRS 625.090(2) exists.[9] KRS

---

[9] In relevant part, KRS 625.090(2) provides:

> No termination of parental rights shall be ordered unless the Circuit Court also finds by clear and convincing evidence the existence of one (1) or more of the following grounds:
>
> . . . .
>
> (e) That the parent, for a period of not less than six (6) months, has continuously or repeatedly failed or refused to provide or has been substantially incapable of providing essential parental care and protection for the child and that there is no reasonable expectation of improvement in parental care and protection, considering the age of the child;
>
> . . . .
>
> (g) That the parent, for reasons other than poverty alone, has continuously or repeatedly failed to provide or is incapable of providing essential food, clothing, shelter, medical care, or education reasonably necessary and available for the child's well-being and that there is no reasonable expectation of significant improvement in the parent's conduct in the immediately foreseeable future, considering the age of the child;
>
> . . . .
>
> (j) That the child has been in foster care under the responsibility of the cabinet for fifteen (15) cumulative months out of forty-eight (48) months preceding the filing of the petition to terminate parental rights[.]

625.090; *see also Cabinet for Health and Fam. Servs. v. K.H.*, 423 S.W.3d 204, 209 (Ky. 2014).

Parents do not contest the finding that Children were neglected. They instead argue that no grounds under KRS 625.090(2) existed and that it was not in Children's best interests for the termination to occur.

The family court determined multiple conditions of KRS 625.090(2) existed; however, only one statutory condition needed to have been proven. *See C.J. v. M.S.*, 572 S.W.3d 492, 496 (Ky. App. 2019). As addressed above, while Parents are correct that KRS 625.090(2)(j) has not been met, such a finding is immaterial given the family court's findings under KRS 625.090(2)(e) and (g). Regarding those conditions, Parents state that the evidence in the record actually supports a reasonable expectation of their improvement and that any inability on their part to provide care and essential support to the Children was related to poverty alone. We disagree with their evaluation.

Though all parties and witnesses agreed the family struggled with poverty, Parents had other issues which contributed more significantly to their ability to provide care and essential support to the Children, namely their substance abuse, which was, and continued to be, the Cabinet's primary concern through the entirety of the proceedings. Parents did attend an inpatient program and completed assessments toward the beginning of the DNA cases; however, the record is starkly

clear that they did not adequately follow through with the recommendations of those assessments and otherwise comply with their case plans as evidenced by their failure to maintain sobriety and consistently comply with random drug testing. Instead of obtaining the additional assessments and treatment urged by the Cabinet, Parents only sought what they believed to be sufficient. It is incongruous to maintain that the Cabinet did not attempt to provide sufficient additional support or services when Parents would not engage in the additional assessments and treatment the Cabinet insisted upon while at the same time failing to follow the recommendations of the assessments and treatments with which they had chosen to engage.

It is true the temporary Cabinet worker testified that she thought Parents had a reasonable expectation of improvement in March 2024. In an apparent effort to give Parents one more opportunity to address their issues, the family court ultimately continued the termination hearing for four months. Despite this reprieve, over those four months Mother lost her employment due to her then-pending criminal charges and Parents continued to abuse substances; chose not to seek additional assessments or treatment until shortly before the second day of the hearing; and did not adequately inform the Cabinet of any changes to their living situation. Parents' situation is different than that of the mother in *M.E.C. v. Commonwealth, Cabinet for Health & Family Services*, 254 S.W.3d 846 (Ky. App.

2008), which Parents cite for support. In *M.E.C.*, this Court held that the Cabinet had not exercised reasonable efforts in providing appropriate services and support and that there was a reasonable expectation of improvement on the mother's part. *Id.* at 854. In making the determination, we recognized that there had not been substantial evidence proving M.E.C. had abused or neglected her children; the Cabinet had not taken into consideration M.E.C.'s involuntary hospitalization and incarceration for the majority of the DNA case in its providing of services; and M.E.C. had made significant progress in obtaining and maintaining full-time employment. M.E.C. was actively engaged in a substance abuse treatment program, resolved most of her legal issues, and was cooperative with the Cabinet after her incarceration. *Id.* In this case, there is no dispute that Children were neglected or abused; Parents were never hospitalized or incarcerated for any significant period of time that would have prevented them from cooperating with the Cabinet; and, as indicated above, Parents continued to have significant issues even through July 2024. Ultimately, at the second day of the hearing, the family's ongoing Cabinet worker testified that there was no reasonable expectation of improvement in parental care and protection or Parent's conduct in the immediately foreseeable future, considering the age of Children. Given the evidence provided at the hearing below, we find no error in the family court's determination that the mandates of KRS 625.090(2) were met.

Finally, a determination of a child's best interests is reviewed for an abuse of discretion. *Young v. Holmes*, 295 S.W.3d 144, 146 (Ky. App. 2009). Unlike "[c]lear error [which] applies to a review of a trial court's findings of fact; abuse of discretion applies in other situations where, for example, a 'court is empowered to make a decision—of its choosing—that falls within a range of permissible decisions.'" *Miller v. Eldridge*, 146 S.W.3d 909, 915 (Ky. 2004) (citation omitted). Much for the reasons above, we find no abuse of discretion in the family court's determination that termination of Parents' rights is in Children's best interest under KRS 625.090(3). *See, e.g.*, *J.L.C. v. Cabinet for Health & Fam. Servs.*, 539 S.W.3d 692, 696 (Ky. App. 2018).

## IV. CONCLUSION

Accordingly, we affirm the Franklin Circuit Court's August 15, 2024, Findings of Fact, Conclusions of Law, and Orders of Judgment terminating Appellants' parental rights.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Nicole S. Bearse
Frankfort, Kentucky

James D. Liebman
Frankfort, Kentucky

BRIEF FOR APPELLEE CABINET FOR HEALTH AND FAMILY SERVICES:

Leslie M. Laupp
Covington, Kentucky

-14-